STATE of Missouri, Respondent,

v.

Walter R. DULANEY, Appellant.

No. WD 55625.

Missouri Court of Appeals,
Western District.

March 31, 1999.

Amy Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin Frazier, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge JAMES M. SMART, Jr., Judge FOREST W. HANNA and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant, Walter Dulaney, was convicted by the court, sitting without a jury, of second-degree assault in violation of Section 565.060, unlawful use of a weapon in violation of Section 571.030.1(4), and armed criminal action in violation of Section 571.015.1, and sentenced to five, four, and three years imprisonment, respectively.[1] Defendant asserts that the trial court erred in overruling his motion for judgment of acquittal on the charges of second-degree assault and armed criminal action, because the State failed to prove beyond a reasonable doubt that he did not act in lawful self-defense or defense of premises.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts presented at trial, and the trial court's credibility determinations, were as follows:

Defendant and his wife, Jenny, lived on Whiteman Air Force Base. On the evening of April 25, 1997, Defendant was drinking and playing cards at the home of his next-door neighbor, David Hill. Mrs. Dulaney was at the home of another nearby neighbor, Diane Schmitt. A teenage girl was watching the Dulaneys' young son at their home while both parents were away. Around 10:30 p.m., Mrs. Dulaney went to the Hill residence and asked Defendant to return home to put their child to bed because she wanted to leave to visit Bryant and Shannon Gresham, another couple living on the base. Defendant agreed to return home to take care of the child and stated he would be there in about 15 minutes. When he returned home, however, he found his wife had already left for the Greshams' house, leaving their young son unattended.

Around 11:45 p.m., Defendant decided to go talk to his wife at the Greshams' house. When Defendant arrived at the Greshams' house he found his wife with Anthony Caldwell, a friend of Mr. Gresham. Mr. and Mrs. Gresham were also at the house, but were already in bed for the evening. Defendant confronted his wife and they argued on the Greshams' front lawn. Awakened by the noise, Shannon Gresham came to the front door to see what was happening. After hearing Defendant telling someone to "Get back in the house b____!," Bryant Gresham also came to the front door. According to Bryant, Defendant pointed a gun in his direction and told him to go back in the house, so Bryant went back inside his home. Defendant denied that he had a weapon, and said he just pointed his finger at Bryant and pretended it was a gun. The trial judge found that Defendat had indeed brandished a weapon at the Gresham's home and convicted him of unlawful use of a weapon. Defendant does not appeal that ruling.

The charges of assault and armed criminal action grew out of what happened after Defendant left the Greshams' house. Bryant and Shannon Gresham testified that, as soon as Defendant left their home, they began to look for their telephone so they could call the police and report the incident. They claimed that their only telephone was cordless and that they could not find it, so Bryant and his friend Anthony decided to drive to the home of their only friend in the area, Diane Schmitt. When they arrived, they parked in the driveway of the house across the street, and then went into Diane's house and called the police.

Unfortunately, Diane lived across the street from Defendant, and Bryant and Anthony had parked their car in Defendant's driveway. They claimed at trial that it was just chance that Diane happened to live across the street from the Defendant, and that they did not realize that they parked in Defendant's driveway. The Court found this testimony not to be credible, and concluded that they purposely drove to Diane's because it was across from Defendant's house and that they did so because they intended to take revenge for Defendant's misconduct at the Greshams' earlier in the evening.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Meanwhile, Defendant returned to visit his next-door neighbor, Mr. Hill. From Mr. Hill's front porch, he saw Bryant and Anthony park in his driveway. Rather than go back to his home in a place of safety with his sleeping son, he moved to his front porch with his gun. He watched the two men emerge from Diane's house, and the three exchanged words, including racial ephitets and physical threats of violence. Bryant and Anthony then began walking toward their car in Defendant's driveway. Defendant took out his gun, pointed it towards the two approaching men, and fired. His shot did not hit anyone, and he claimed at trial that he had just aimed the gun in the air and fired in an unsuccessful attempt to scare off the men.

Defendant's neighbor, Mr. Hill, was on his front porch when he heard the gunshot. Mr. Hill walked over to Defendant and took his gun away from him and told Bryant and Anthony to leave. As the men nonetheless continued to approach, Defendant grabbed the gun back from Mr. Hill. Defendant states he did so because he was fearful for his life because both Bryant and Anthony were larger than he. Mr. Hill went back to his home and called the police. Although Defendant admitted at trial that he could have gone into his house, he claimed that he did not do so because his son was inside and he was afraid his son's safety would be jeopardized if the men followed him inside the home. In any event, as Bryant and Anthony got close to Defendant, he lowered the gun. A struggle ensued, and by the time the police arrived Defendant was unconscious with the gun lying on the ground next to him. Defendant was taken to the hospital by ambulance. After he was released from the hospital, he was charged with assault and armed criminal action based on his action in shooting his gun in the direction of Bryant Gresham when Bryant and Anthony first approached his house.

After hearing the above evidence, the court found Defendant guilty on all counts, stating:

Every time any initial aggression came about it was the result of Mr. Dulaney's actions and not these two other men who ended up beating him up ... If Mr. Dulaney were truly afraid for his welfare, or that of his son, he had plenty of time, once they were in Diane Schmitt's house to walk to his telephone and call the police and tell them there was an emergency. Instead, he made the choice to stand out and protect his turf, as he would like to put it, and become the aggressor while firing the shot.

. . . .

Regardless of what happened to you [defendant] after you fired that shot, and regardless of what happened before you got your gun and fired that shot, as far as I'm concerned you're not justified in having done that, and that's why I found you guilty. There was no self-defense as far as I was concerned, and there was no justification as far as I was concerned.

Defendant now appeals his convictions for second-degree assault and armed criminal action.

## II. STANDARD OF REVIEW

Our review of the sufficiency of evidence supporting a criminal conviction is limited to the determination whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). In determining whether the evidence is sufficient to support a conviction, we accept as true all evidence favorable to the state, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *Id.*

## III. SUFFICIENCY OF THE EVIDENCE

Defendant claims the evidence was insufficient to convict him of second-degree assault and armed criminal action because the State failed to produce sufficient evidence to prove beyond a reasonable doubt that he did not act in lawful self-defense or defense of premises.

Both self-defense and defense of premises are defenses of justification. In Missouri, defense of premises is essentially accelerated self-defense because it authorizes "protective acts to be taken earlier than they otherwise would be authorized, that is, at the time when and place where the intruder is seeking to cross the protective barrier of the house." *State v. Ivicsics,* 604 S.W.2d 773,

777 (Mo.App.1980). Once an intruder has entered the dwelling without resistance, however, the principles of self-defense apply. *State v. Lumpkin*, 850 S.W.2d 388, 392 (Mo. App.1993). The defendant has the burden of injecting both issues of defense into his case. § 563.036; § 563.031. If there is evidence to support either issue, the burden then shifts to the state to disprove either self-defense or defense of premises beyond a reasonable doubt. *State v. Watson*, 839 S.W.2d 611, 615 (Mo.App.1992). A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense. *State v. Gilpin*, 954 S.W.2d 570, 580 (Mo.App.1997). Moreover, in order to claim self-defense in Missouri, the defendant: (1) must not have provoked the assault; (2) must have reasonable grounds for believing he faced immediate danger of serious bodily injury; (3) must not use more force than what appears reasonably necessary; and (4) must do everything in his power consistent with his own safety to avoid the danger and retreat if possible. § 563.031; *State v. Davidson*, 941 S.W.2d 732, 735 (Mo. App.1997); *State v. Williams*, 815 S.W.2d 43, 48 (Mo.App.1991).

■ Defendant claims this was the case here. He says he was justified in firing a shot at Bryant Gresham in self-defense because he reasonably believed that it was necessary to do so to protect himself from serious physical injury. Defendant further asserts that he was provoked, that the alleged victims came to his home to exact revenge, and that they outmatched him in both size and number. Therefore, he argues, his belief in the need to use force to defend himself was reasonable and as a matter of law the State failed to prove beyond a reasonable doubt the absence of a need for self-defense.

We agree that the evidence supports the first two elements of self-defense, that is, that Defendant did not provoke the assault and that he had reasonable grounds to believe he faced immediate danger of serious bodily injury in that, although he started the altercation at the Greshams' home, he thereafter retreated to his own home. And, although there was conflicting evidence surrounding who was the aggressor in the second altercation in Defendant's front yard, the court below did find that Bryant and Anthony had gone to Defendant's home in order to retaliate for Defendant's prior conduct a the Greshams' house. In order to prove self-defense however, defendant also had to show that he did not use more force than was necessary and that he did everything in his power consistent with his own safety to avoid the danger and retreat. There was clearly evidence which supported the court's finding below that he did not do this. Defendant's own evidence showed that he chose to go out into his yard and confront Bryant and Anthony when they left Diane's house, and that he took his gun with him. Defendant does not claim he had to leave his house or that he could not have retreated to it once the two men began to approach. While he claims that he thought this would endanger his son, the trial court did not have to believe, and in fact did not believe, this testimony. This evidence fully supported the court's conclusion that Defendant did not need to use his weapon in self-defense and that he had an opportunity to retreat but did not do so, and thus did not meet the requirements for the justification of self-defense.

■ Defendant further argues that he had no duty to retreat here because he was also acting in defense of his premises. Justification based upon defense of premises is limited in scope to the "use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of the crime of trespass by the other person." § 563.036(1). The elements necessary to establish defense of premises are: (1) an immediate danger of entry; (2) the entry is being attempted to kill or inflict serious bodily harm on the occupant; and (3) deadly force was necessary to prevent entry. *Lumpkin*, 850 S.W.2d at 392.

■ As noted above, the theory of Defendant's case is that he discharged his gun from his front porch to scare off Bryant and Anthony, and that he was standing on his front porch trying to protect himself and his child sleeping inside the home from the two

larger men who were approaching him and yelling threats of physical violence. There is no evidence Bryant or Anthony were attempting to enter the Dulaneys' dwelling either to try to burn it or to kill or inflict serious physical injury on someone inside the home. Yet, Defendant used deadly force by discharging his gun. Since deadly force may be used in defense of a dwelling only when a trespasser is attempting to enter the dwelling or burn it in order to kill or inflict serious physical injury on someone inside, these facts do not support defense of premises and do not justify Defendant's actions. Therefore, the court was not required to acquit defendant based on the justifications of self-defense or defense of premises.

For these reasons, the judgment is affirmed.

Presiding Judge JAMES M. SMART, Jr. and Judge FOREST W. HANNA, concur.