**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Larry GOODINE, Defendant–Appellant.**

**No. 26827.**

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 2006.

Motion for Rehearing or Transfer
Denied June 21, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Larry Goodine ("Appellant") was convicted of assault in the first degree, a violation of section 565.060, and armed criminal action, a violation of section 571.015.[1] He was sentenced to twenty years for assault and a consecutive term of five years for the armed criminal action. Appellant brings three points on appeal: two claiming error in the jury instructions and one positing plain error for a remark made by the State in closing argument. We find no error and affirm; however, we remand for a correction of a clerical error in the written sentence and judgment.

Appellant does not challenge the sufficiency of the evidence; however, he did claim self-defense at the trial so facts favorable to his defense will be related in our discussion of the incident. Appellant was residing with his brother, Rick Goodine ("Rick"), because his utilities had been disconnected by his landlord, Fred Bounous ("Fred"), in an effort to evict Appellant.[2] Appellant had been served with an eviction notice a few days before the incident which led to the ultimate convictions. When Fred asked his son, Mike Bounous ("Mike"), to speak with the Goodines about leaving, Mike asked brothers Corey Baldwin ("Corey") and Randy Baldwin ("Randy") to go with him to the trailer park and assist him in notifying the Goodines that they were being evicted.

The stories of the witnesses diverge at this point; however, it is clear that Mike and Corey went to Rick's trailer while Randy waited at the landlord's trailer. According to the State's evidence, neither Mike nor Corey were carrying weapons when they knocked on Rick's trailer door. Appellant and his brother, who had been drinking, both answered the door and a "heated argument" ensued. Appellant, who had kept his hand in his pocket up until then, stepped out and started swinging at Mike; Mike realized that Appellant had stabbed him in the chest. The knife, a

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. Throughout this opinion, the witnesses will be referred to by their first names for ease of reference because many of them have the same surname. We do not intend any disrespect by using this convention.

4½ to 6–inch long, locked blade hunting knife, hit Mike's rib and went under his chest muscle.[3]

As Mike jumped off the deck, Rick, who did not have a weapon, attacked Corey. Appellant then came over and stabbed Corey in the arm and wrist.[4] Mike grabbed a weed eater, which was lying in the yard, and used it to knock Appellant off Corey. Appellant said he was going to kill them, jumped off the porch and tried to stab Mike again, but Mike used a TV dinner tray to block the knife.

Randy, who had heard the screaming and saw the commotion, came into the yard to help Corey and Mike, who were trying to get away. Rick told Randy to "stay out of it"; however, Appellant approached Randy and stabbed him in the chest within seconds. Randy collapsed, but Appellant continued stabbing him in the arm and leg until Fred came into the yard and hit Appellant in the head with a cinder block.[5] Appellant then stabbed Fred under the armpit.[6]

Appellant did not testify at trial, however, some of his statements were introduced through various witnesses. Also, his brother, Rick, testified in order to relate the defense's version of the events. Rick testified that sometime before the incident at issue, Appellant and Randy had an argument after Randy and Corey tried to pick a fight with Appellant at a local bar called the Stagger Inn. There was a physical altercation between Appellant and Randy at the Stagger Inn. Randy and Corey also threatened Appellant and Rick after

the fight by stating, "[t]hey'd catch [Appellant and Rick] outside."

Rick relayed that on the day of the incident both he and Appellant bought some beer and drove home to the trailer park. After stepping onto the porch of his trailer, he saw five individuals, Randy, Corey, Mike, Fred, and a man named Floyd, walking fast toward his trailer. Mike, Randy, and Corey came onto the porch of the trailer. Mike then said to Appellant, "oh, you like to hit old men," referring to his father Fred. Appellant denied touching Fred. At that moment, Mike tried to hit Appellant, and Randy hit Rick with a spring. A fight started on the porch to the trailer and then spilled into the yard, resulting in Appellant and Rick fighting four or five people and getting beaten with "clubs and baseball bats and pipes and chains and stuff." Rick saw Randy holding a knife, but he did not see Appellant stab anyone because he was fighting other people. Every person fighting Rick and Appellant was armed with a weapon. There was additional evidence that Fred often did not get court orders to have a sheriff evict a tenant from the trailer park, and that his preferred method of eviction was to cut the power to the trailer and to solicit residents to beat up other residents so they would move out. There was also evidence that Randy had a blood alcohol level of 0.249% at the hospital, and that he went into "DT's" and tore out his tubes in intensive care. Randy also tested positive for marijuana and methamphetamine, and he told the doctors that he had taken Xanax and Valium the day of the fight. Corey was so intoxicated that one of the

3. Appellant was never charged with assaulting Mike. His convictions relate only to the offense of assaulting Randy.

4. Appellant was not charged with assaulting Corey.

5. The parties do not dispute that Randy's injuries were serious bodily injuries.

6. Appellant was not charged with assaulting Fred. Fred has since passed away, but the record does not suggest that his passing was a result of the incident in this case.

officers that responded to the scene said that he could smell the alcohol coming off Corey and that it was coming out of his pores.

Based on the foregoing evidence, the trial court instructed the jury on first-degree assault, armed criminal action, self-defense, and defense of third persons; however, it refused to give Appellant's proposed instruction on defense of premises. The refusal to give an instruction on the defense of premises is the basis of Appellant's first point relied on.

■ In Point I, Appellant posits that the trial court committed reversible error when it failed to offer an instruction on defense of premises. At trial, Appellant offered MAI–CR 3d 306.10, submitted as Instruction No. C, which was refused by the trial court. This instruction provided,

> One of the issues as to Count I is whether the use of force by [Appellant] against Randy Baldwin was in defense of premises. In this state, the use of force including the use of deadly force to protect premises is lawful in certain situations.
>
> A person can lawfully use force against another person in defense of premises if he is in
>
> possession of the premises and reasonably believes the other person is committing or attempting to commit the crime of trespass.
>
> If a person has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to end or prevent that trespass.
>
> But in defense of premises from a trespass, a person is not permitted to use deadly force,
>
> that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless the

entry into the premises was attempted in a violent and tumultuous manner and he reasonably believes that the entry was attempted for the purpose of assaulting or offering physical violence to any person in the premises. And, even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to prevent the commission of trespass and assault.

> As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.
>
> As to the issue of the defense of premises in this case, you are instructed as follows:
>
> If [Appellant] was in possession of a trailer located in the Bonous [sic] Trailer Park and reasonably believed Randy Baldwin was attempting to trespass on those premises, and if the entry into the premises was attempted in a violent and tumultuous manner and if [Appellant] reasonably believed Randy Baldwin attempted to make the entry for the purpose of assaulting [Appellant] and Rick Goodine who were on the premises, and [Appellant] reasonably believed that the use of deadly force was necessary to prevent the commission of trespass and assault, then [Appellant] acted in lawful defense of premises.
>
> The state has the burden of proving beyond a reasonable doubt that [Appellant] did not act in lawful defense of premises. Unless you find beyond a reasonable doubt that [Appellant] did not act in lawful defense of premises,

you must find [Appellant] not guilty under Count I.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

The trial court refused to give this instruction to the jury. Appellant's Point I claims it was reversible error for the trial court to refuse to instruct the jury with MAI–CR 3d 306.10.

A defendant is entitled to an instruction on any theory that the evidence and the reasonable inferences drawn therefrom establish. *State v. Westfall,* 75 S.W.3d 278, 280 (Mo. banc 2002). The trial court errs in failing to submit an instruction on justification when there is substantial evidence to support the defense of justification. *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992). The evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the defendant. *Id.* While there must be substantial evidence presented at trial supporting a defense before the trial court is required to submit an instruction on that defense, the defendant is not required to put on any affirmative evidence that establishes the defense. *Westfall,* 75 S.W.3d at 281; *State v. Lumpkin,* 850 S.W.2d 388, 392 (Mo.App. W.D. 1993). Therefore, the entire trial record must be examined in a light most favorable to the defendant because "[i]f the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on [that theory]." *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003).

In Missouri, defense of premises is a defense of justification. *State v. Dulaney,* 989 S.W.2d 648, 650 (Mo.App. W.D. 1999). Defense of one's premises is an accelerated form of self-defense. *Avery,* 120 S.W.3d at 204. This defense "authorizes 'protective acts to be taken earlier than they otherwise would be authorized, that is, at the time when and place where the intruder is seeking to cross the protective barrier of the house.' " *Id.* (*quoting Perkins v. State,* 77 S.W.3d 21, 24 (Mo. App. E.D.2002)). However, once the intruder enters the premises without resistance, the defender is no longer entitled to an instruction on defense of premises. *See Avery,* 120 S.W.3d at 204; *Dulaney,* 989 S.W.2d at 651; *Lumpkin,* 850 S.W.2d at 392. At that point, the principles of self-defense apply. *Avery,* 120 S.W.3d at 204.

Appellant's point and argument concern the propriety of a jury instruction on whether Randy attempted to enter Rick's trailer in a violent and tumultuous manner and if he did so for the purpose of assaulting or offering physical violence toward Appellant or his brother. The State counters that there was absolutely no evidence that the victim or anyone else acting with him made any effort to gain entry into the premises in a violent or tumultuous manner. Thus, the question as defined by the parties in this case is whether Appellant was entitled to an instruction claiming a defense of the trailer.[7]

It should be noted that as used in section 563.036, "premises" is usually understood to constitute the house, or dwelling, and not broadly to include all of the defender's property. Section 563.011(3) defines "premises" as "any building, inhabitable structure and any real property." Section 563.011(3). Although this defini-

---

**7.** We note here that it was actually Rick's trailer, but for the purposes of this analysis, the trailer was considered Appellant's home.

tion encompasses "any real property," the cases interpreting the defense of premises statute usually construe "premises" in terms of "dwelling" or "house." *See Avery*, 120 S.W.3d at 204 (stating that defense of premises authorizes the defender to take protective acts when the intruder is seeking to cross the protective barrier of the *house*) (emphasis added); *Dulaney*, 989 S.W.2d at 651 (stating "[o]nce an intruder has entered the *dwelling* without resistance, however, the principles of self-defense apply.") (emphasis added); *Lumpkin*, 850 S.W.2d at 392 (stating that the defense of premises applies prior to and during the intruder's entry into the *dwelling*) (emphasis added); *Perkins*, 77 S.W.3d at 24 (stating that defense of premises authorizes the defender to take protective acts when the intruder is seeking to cross the protective barrier of the *house*, and that once an intruder enters the *dwelling*, self-defense, and not defense of premises, applies to justify force against the intruder); *State v. Ivicsics*, 604 S.W.2d 773, 776 (Mo.App. E.D.1980) (stating "[d]efense of habitation, as its name implies, defines a defender's privilege to defend his *dwelling* against an unlawful entry.") (emphasis added).

There is no dispute that Appellant used "deadly force" in stabbing Randy with a knife. With this in mind, the issue to be resolved, as the parties frame it, is whether substantial evidence was produced at trial that Randy attempted to enter the trailer in a "violent and tumultuous manner" in order to assault or offer physical violence to Appellant or Rick. A review of the record, in a light most favorable to Appellant, indicates a lack of substantial evidence to inject the issue of defense of premises and, therefore, a defense of premises instruction was not warranted.

There was evidence that Appellant and Randy had an argument after Randy and Corey tried to pick a fight with Appellant at a local bar called the Stagger Inn. There was a physical altercation between Appellant and Randy at the Stagger Inn. Randy and Corey also threatened Appellant and Rick after the fight by stating, "[t]hey'd catch [Appellant and Rick] outside."

There was evidence that on May 15, 2002, Appellant was inside the trailer when Randy, Corey, Mike, Fred, and Floyd were running toward the trailer. All of these men were armed with weapons. They were carrying clubs, baseball bats, pipes, a spring, and a chain. Randy was carrying a knife. Randy, Corey, and Mike made their way onto Appellant's porch to his trailer.

Mike testified that the purpose for going to Rick's trailer that day was to evict Appellant and Rick from the trailer. When they approached the porch to the trailer, Mike told Appellant that he was served with an eviction notice and that he needed to vacate the premises.[8] An argument over when Appellant and Rick had to vacate the trailer ensued and it turned into a heated argument. Appellant wanted thirty days, but Mike told him "they needed to be gone." Mike testified Appellant and Rick then came out on the porch. According to Rick, he and Appellant were already on the porch when they saw four people walking fast toward them. Rick claimed he was hit with a pipe and Randy used a spring immediately thereafter to hit Rick to start the fight.

At this point, the evidence and its reasonable inferences suggest a brawl ensued on the porch to the trailer which later spilled onto the adjoining yard. Rick testi-

---

**8.** At the time of this altercation, a sheriff's officer was not present and there had not yet been a court order issued ordering Appellant to vacate the trailer.

fied that the fight was five against two, and that he and Appellant were "getting the sh—beat out of [them]." The onslaught against Appellant and Rick was so bad that Rick admitted that if he had a gun, he would have killed the attackers. Appellant used a knife to stab Randy four times. At some point during the fight, Appellant was hit in the head with a concrete brick.

Even after construing the evidence in the light most favorable to Appellant, as described above, there was not substantial evidence presented to inject the issue of defense of premises. The inferences drawn from the evidence paints a picture of an intrusion up to the entrance of the trailer, but there are no reasonable inferences that anyone was actually attempting to *enter* the trailer. The evidence was clear that there was a verbal confrontation before any physical fighting occurred. There is nothing in the record to suggest that Appellant reasonably believed that Randy was attempting to trespass, or enter, on the premises. No version of the events indicates that at any time anyone attempted to enter the trailer. Although there is a dispute as to who the initial aggressor was, all of the incidents occurred in the yard and no one was defending the premises from an outside attack.

Even if "premises" is construed to include all of the property up to the trailer, defense of premises is still not applicable in this case. Once the intruder enters the premises without resistance, the defender is no longer entitled to an instruction on defense of premises. *See Avery,* 120 S.W.3d at 204; *Dulaney,* 989 S.W.2d at 651; *Lumpkin,* 850 S.W.2d at 392. At that point, the principles of self-defense, and not defense of premises, apply. *Avery,* 120 S.W.3d at 204. Appellant was given an instruction on self-defense. Point I is denied.

In Point II, Appellant argues that the trial court plainly erred when it permitted the State, in closing argument, to tell the jury that they could only consider the acts of Randy, and not the other associates, in determining whether Appellant acted in lawful self-defense in stabbing Randy. In Point III, Appellant posits that the trial court plainly erred in failing to *sua sponte* modify Appellant's proffered self-defense instruction, MAI–CR 3d 306.06, Instruction No. 6 at trial, to instruct the jury that it could consider not only the actions of Randy, but of Randy's associates, in determining whether Appellant acted in self-defense in stabbing Randy. Appellant's argument rests on the premise that Instruction No. 6 incorrectly stated the law with regard to self-defense in multiple assailant situations. Given the nature of such challenges, Point III will be discussed before Point II, as the disposition of Point II necessarily depends on the outcome of Point III.

The trial court submitted a self-defense instruction, Instruction No. 6, which stated,

One of the issues in this case is whether the use of force by [Appellant] against Randy Baldwin was in self-defense. In this state, the use of force to protect oneself from harm is lawful in certain situations.

In order for a person lawfully to use force in self-defense, he must

reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself.

As used in this instruction, the term "reasonable belief" means a belief

based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of self-defense as to Count I, you are instructed as follows:

If [Appellant] was not the initial aggressor in the encounter with Randy Baldwin,

and if [Appellant] reasonably believed he was in imminent danger of harm from the acts of Randy Baldwin and [Appellant] used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that [Appellant] did not act in lawful self-defense. Unless you find beyond a reasonable doubt that [Appellant] did not act in lawful self-defense, you must find [Appellant] not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Evidence has been introduced of the prior relationship between [Appellant] and

Randy Baldwin including evidence of acts of violence. You may consider this evidence in determining who was the initial aggressor in the encounter and you may also consider it in determining whether [Appellant] reasonably believed he was in imminent danger of harm from Randy Baldwin.

You, however, should consider all of the evidence in the case in determining whether [Appellant] acted in lawful self-defense.

Appellant complains that Instruction No. 6, patterned after MAI–CR 3d 306.06, improperly instructed the jury on the law in that the instruction limited Appellant's "reasonable belief that he was in imminent danger of harm" to the consideration of the actions of Randy and not to the actions of multiple assailants. Although Appellant submitted Instruction No. 6 to the court, he now claims the court plainly erred in not *sua sponte* modifying the instruction. He argues the model instruction should have been tailored to the facts of this case in that the jury could have found that Appellant was entitled to defend himself because he reasonably feared harm at the hands of a number of assailants. Specifically, Appellant believes the instruction should have been modified to include language similar to "Randy Baldwin or those whom the defendant reasonably believed were acting in concert with Randy Baldwin."

■■■■ We first address the issue of whether this claim is reviewable as plain error. Appellant contends, under *State v. Derenzy*, 89 S.W.3d 472, 475 (Mo. banc 2002), that an unpreserved claim of plain error may still be reviewed under Rule 30.20 if a manifest injustice would otherwise occur.[9] Instructional error constitutes plain error when it is clear that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice. *State v. Farris*, 125 S.W.3d 382, 390 (Mo.App. W.D.2004). Appellant claims that under the totality of the circumstances, including the number of persons reasonably appearing to be threatening Appellant, the jury

---

**9.** All rule references are to Missouri Court Rules (2006), unless otherwise specified.

was entitled to evaluate the reasonableness of Appellant's belief in the necessity of defensive action and the reasonableness of force used by him to repel the apparent danger. The State, on the other hand, contends that Appellant waived his right to appellate review by submitting the allegedly improper self-defense instruction; it argues that an appellate court should be especially reluctant to grant plain error relief on instructional issues when counsel has failed to comply with Rule 28.03. Rule 28.03 provides,

> Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Rule 28.03.

In both *State v. Derenzy,* 89 S.W.3d 472 (Mo. banc 2002) and *State v. Westfall,* 75 S.W.3d 278 (Mo. banc 2002), the court ruled that even though the failure of the appellant to proffer a correct version of an alleged improper jury instruction waived claims of error under Rule 28.03, the failure of the trial court to give the proper instruction could still be reviewed for plain error under Rule 30.20. *Derenzy,* 89 S.W.3d at 475; *Westfall,* 75 S.W.3d at 281 n. 9. In *Westfall,* the court stated that so long as the appellant injects the issue of self-defense, the trial court is required to instruct on self-defense, even if the appellant does not request such an instruction, or even if the appellant proffers an im-

properly formed instruction. *Westfall,* 75 S.W.3d at 281 n. 9.

The State correctly notes that *State v. Beck,* 167 S.W.3d 767 (Mo.App. W.D.2005), held that in a similar fact situation to the case at bar, the appellant did not waive his claim that the trial court plainly erred to *sua sponte* modify MAI–CR 3d 306.06 to account for multiple assailants, even though the appellant never requested such a modification, but instead proffered the MAI–CR 3d 306.06 that he on appeal claimed to be erroneous. *Id.* at 778. Moreover, in *Johnson v. State,* 2006 Lexis at *16 n. 4 (Mo.App. W.D. April 4, 2006), the western district stated "[t]he affirmative waiver of any objection to the giving of a jury instruction, either by stating 'no objection' or by proffering the very instruction which the proffering party challenges on appeal, does not waive plain error review under Rule 30.20." This is because "the trial court has a *sua sponte* duty to instruct the jury on the correct law, as to a substantial right, to insure that the defendant receives a fair trial." *Johnson,* 2006 Lexis at *16 n. 4; *Westfall,* 75 S.W.3d at 281 ("Even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights.").

In light of *Derenzy* and *Westfall,* and their progeny, this Court does have the power to engage in plain error review, pursuant to Rule 30.20, over Appellant's claim of instructional error; however, we next determine whether the claimed error resulted in a manifest injustice. We find that it did not.

The plain error rule is to be used sparingly, and this Court will not apply it to review every alleged trial error not properly preserved. *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997); *State v. Campbell,* 122 S.W.3d 736, 739 (Mo.App. S.D.2004). Plain error review is limited to

the text of Rule 30.20, which states in pertinent part, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. First, this Court must "determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred." *Campbell*, 122 S.W.3d at 740. If substantial grounds on the face of the claim exist showing a manifest injustice or miscarriage of justice, then this Court moves to the second step; reviewing the claim for plain error to determine whether a manifest injustice or a miscarriage of justice actually occurred. *Id.* However, if Appellant cannot get past the first step, this Court should refrain from reviewing his claim. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995).

The State argues that Instruction No. 6 accounted for multiple assailant situations via its definition of "reasonable belief" in MAI–CR 3d 306.06 Part A[4]. The State's argument is (1) the jury was allowed to consider whether Appellant reasonably believed that he was in imminent danger of harm from Randy Baldwin, and (2) "reasonable belief" was defined in the instruction as a "belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This is upon how the facts reasonably appeared." The State posits that the use of the words "same situation" in the jury instruction connotes something more than the mere actions of Randy, the victim. Under the definition of "reasonable belief," the State argues, "the jury was not restricted to consider only the victim's actions, but was permitted to consider the actions of all persons and the totality of the circumstances in determining whether Appellant had a reasonable belief of imminent danger."

Although contrary to the State's position, at first blush it appears that *Beck* resolves the issue in favor of Appellant. We, however, find significant differences in the instruction proffered in *Beck* and in the State's closing arguments in both cases warrant a different conclusion than that of *Beck*. In *Beck*, the defendant was convicted of assault in the second degree after stabbing the victim with a knife. *Beck*, 167 S.W.3d at 770. The defendant testified that the victim and two of the victim's friends started a fight against him. *Id.* The victim held the defendant from behind while the friends approached the defendant with a baseball bat and a metal pipe. *Id.* According to the defendant, he stabbed the victim because he believed that was the only way to escape the victim's hold in order to avoid being assaulted by the friends. *Id.* at 770–71.

At trial, the defendant proffered a self-defense instruction that was patterned after MAI–CR 3d 306.06. *Id.* at 771. Significantly, the instruction in *Beck* did not include a paragraph regarding the prior relationship between the defendant and the victim. *Id.* at 771. More importantly, in *Beck*, the following admonition to the jurors was not contained in the jury instruction: "You, however, should consider all of the evidence in the case in determining whether [Appellant] acted in self-defense." *Id.*

In closing argument of *Beck*, the State commented, " 'I would suggest you read the Court's instruction to you on self-defense. It only relates to what [the victim] did, not what anybody else-what the defendant claims somebody else did.' " *Id.* During the State's final argument, the prosecutor stated: " '[The defendant], under the law, whether we like it or not, is entitled to react only against what [the victim] did, not what some other people supposedly

did.'" *Id.* at 771. The jury convicted the defendant of second-degree assault, thus finding the defendant did not act in lawful self-defense. *Id.* The defendant appealed his conviction and claimed on appeal that the trial court plainly erred by failing to *sua sponte* modify his proffered self-defense instruction to allow the jury to consider the imminent danger of harm from not only the victim, but also from the friends in determining whether he acted in lawful self-defense, and in failing to *sua sponte* declare a mistrial for the State's argument that the jury could only consider the actions of the victim. *Id.* at 770. The defendant's argument was that in multiple assailant situations, MAI–CR 3d 306.06 did not follow the substantive law of self-defense. *Id.* at 770.

The appellate court first recognized Rule 28.02(c)'s mandate that " '[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form.'" *Id.* at 779 (*quoting* Rule 28.02(c)). The defendant conceded Rule 28.02(c) required MAI–CR 3d 306.06 to be applied in cases of self-defense without multiple assailants, but he argued that when a multiple assailant situation existed, MAI–CR 3d 306.06 conflicted with the substantive law of self-defense. *Id.* Citing *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997), the *Beck* court found when a jury instruction conflicts with the substantive law, the court should decline to follow the MAI–CR 3d or its Notes on Use. *Beck,* 167 S.W.3d at 779. Critical to the western district's decision, then, is the claimed conflict between the substantive law on self-defense and MAI–CR 3d 306.06 in situations with multiple assailants.

After addressing the legislative history of section 563.031 and its predecessor stat-ute, the "justifiable homicide" statute, section 559.040 (1969), the court noted "MAI–CR 3d 306.06 does not track the language of § 563.031.1 with respect to the defendant's defending against what he 'reasonably believes to be the use or imminent use of unlawful force.'" *Id.* at 781–82. The court stressed the fact that MAI–CR 3d 306.06 focused on the language of the defendant defending himself against what he reasonably believes to be an *"imminent danger of harm,"* as opposed to the language of section 563.031.1 that focused on the defendant defending himself against what he reasonably believes to be the *"use or imminent use of unlawful force."* *Id.* (emphasis added). This distinction was important to the western district as the court noted that *"unlawful force"* deals with the victim's acts, while *"imminent danger of harm"* deals with the resulting harm from the victim's acts. *Id.* at 782 (emphasis added).

When section 563.031 became law, MAI–CR 2d 2.41.1 (1–1–79) became the required pattern instruction for self-defense in assault cases, using physical force, and that instruction, like section 563.031, spoke in terms of *"unlawful force."* *Id.* at 783 (emphasis added). The court pointed out that while section 563.031 used the language of *"unlawful force,"* the present version of MAI–CR 3d 306.06 dropped the *"unlawful force"* language and substituted it with the language of *"imminent danger of harm"* without any indication in the Notes on Use to MAI–CR 3d 306.06 as to why the change in language occurred. *Id.* (emphasis added). After finding no justified reason for changing the language from *"unlawful force"* to *"imminent danger of harm,"* the court held that "to correctly instruct the law of self-defense, MAI–CR 3d 306.06 should be revised to drop the 'imminent danger of harm' language presently used, in favor of the 'unlawful force' language of § 563.031." *Id.* (emphasis add-

ed). Even though the court found the language of the MAI instruction incorrectly stated the substantive law regarding the "unlawful force" language, it still held that there was no manifest injustice in submitting what it believed was an improper jury instruction because it was not readily apparent that the instruction so confused the jury that there would have been a different outcome had the proper instruction, using the language of *"unlawful force,"* been used. *Id.* at 784.

The court found the MAI-based instruction would cause the jury to make a fine distinction between the language concerning the "acts of the victim" language applying only to the jury's determination of "imminent danger of harm" instead of the "unlawful force" determination required by section 563.031.1 and not to its determination of the "appellant's belief as to the necessity of his response to the victim's alleged unlawful acts to avoid harm or injury." *Id.* at 788. The court continued:

> This then would leave room to argue, as the State does, that Instruction No. 11 instructed the jury that in determining the reasonableness of the appellant's belief as to the necessity for stabbing the victim, in order to avoid harm or injury, it could consider the totality of the circumstances, which would include the acts of the victim's friends. It is unreasonable, however, to suggest that the jury could have made this fine of a distinction, especially given the State's closing argument, which the appellant challenges in Point I, as being contrary to the law of self-defense, given the evidence of multiple assailants.

We accept the conclusion of the *Beck* court that no manifest injustice · results from any claim that MAI–CR 3d 306.06 should be modified to include the language "unlawful force" instead of "imminent danger of harm." We decline to review this instruction for plain error because we find no manifest injustice as there is no conflict between the substantive law on self-defense and instruction No. 6. While section 563.031.1 speaks in terms of a defendant being justified in using force to defend what he reasonably believes to be the *use or imminent use of unlawful force* by the victim, the basis of "self-defense" is rooted in the individual's right to protect himself or herself from *harm or injury*. *See 22 C.J.S. Criminal Law § 49 (2005)* ("[C]onduct which would otherwise constitute an offense is justifiable when the defendant believes it to be necessary to avoid an *imminent public or private injury* greater than the *injury* which is sought to be prevented by the statute defining the offense charged.") (emphasis added).

The law of self-defense is appropriate when it appears reasonably necessary to protect one's self from an impending assault; such danger to one's self must also reasonably appear to be imminent. *State v. McGee,* 361 Mo. 309, 234 S.W.2d 587, 591 (1950); *see In the Interest of J—— M——,* 812 S.W.2d 925, 933 (Mo. App. S.D.1991). Even *Beck* recognizes, in what ' it terms the "bedrock [principle] upon which self-defense is based," that application of self-defense is for the purpose of protecting one's self from harm or injury. *Beck,* 167 S.W.3d at 786. Cases interpreting the substantive law of self-defense after enactment of section 563.031 speak in terms of protecting one's self from imminent or immediate danger of harm. *State v. Miller,* 91 S.W.3d 630, 635 (Mo.App. W.D.2002); *State v. Bowman,* 869 S.W.2d 901, 903 (Mo.App. W.D.1994); *State v. Delgado,* 774 S.W.2d 549, 552 (Mo. App. S.D.1989).

The fact that section 563.031 speaks in terms of *"unlawful force,"* and not *"immediate danger of harm,"* is immaterial to the substantive law of self-defense. The *"un-*

*lawful force*" language of section 563.031 was more likely included by the legislature to provide a justification against *any* showing of force, as opposed to the specifically enumerated showing of forces required in section 559.040 (1969) (providing individuals with the right to commit homicide in three enumerated instances). In this vein, section 563.031 now provides every individual the right to use reasonable force in order to repel the use or imminent use of force against him or her. It no longer is limited to the three enumerated instances in section 559.040 (1969). However, nothing suggests that the "bedrock principle" to self-defense, namely the right to defend one's self when he or she is in imminent danger of harm or injury, was abrogated by enactment of section 563.031.

 Thus, the pattern self-defense instruction, MAI–CR 3d 306.06, tracks the substantive law of self-defense even though it does not exactly mirror the words used in section 563.031. Accordingly, Instruction No. 6 is in accordance with the substantive law, and therefore no plain error exists on the basis that it does not follow the law. Appellant argues that Instruction No. 6 should have been modified to instruct the jury of his "right to use force in order to defend against Randy's associates." Appellant contends that "[a]ccording to [Instruction No. 6], and as argued by the [S]tate . . ., any apprehension of injury from the other people in the group could not be used to justify [Appellant's] stabbing Randy, and it, therefore, improperly restricted [Appellant's] right to assert self-defense in a multiple assailant situation." Appellant states that "[c]ontrary to [Instruction No. 6], the totality of the circumstances, including the number of persons reasonably appearing to be threatening [Appellant] must be considered by the jury in evaluating the reasonableness of [Appellant's] belief in the necessity of

defensive action and the reasonableness of force used by him to repel the apparent danger." Appellant argues that it was plain error for the trial court to fail to modify Instruction No. 6 to include in the instruction the language, "Randy Baldwin *or those whom [Appellant] reasonably believed were acting in concert with Randy Baldwin.*" (emphasis added).

The State counters by arguing that Instruction No. 6 did in fact allow the jury to consider the totality of the circumstances in determining whether Appellant reasonably believed he was in imminent danger of harm. The State argues,

[Instruction No. 6] talks about a reasonable person in the "same situation." Use of the word "situation" connotes something more than the mere actions of the victim. Under this definition the jury was not restricted to consider only the victim's actions, but was permitted to consider the actions of all persons and the totality of the circumstances in determining whether Appellant had a reasonable belief of imminent danger.

The State concedes, "the jury was entitled to consider the totality of the circumstances in determining the self-defense issue," but maintains that the "proper focus is always on the person against whom the defendant applied the force to defend himself."

Appellant's heavy reliance on *Beck* to argue that the trial court in the case at bar plainly erred is not persuasive. First, Instruction No. 6 in the case at bar permitted the jury to consider the actions of Randy's associates in determining whether Appellant acted in lawful self-defense. Instruction No. 6 defined "reasonable belief" as "a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the *same situation* to the same belief." (emphasis added). Thus the jury was entitled to consider the *situation*

of Appellant in determining whether he had a reasonable belief that he was in imminent danger of harm from Randy. Second, Instruction No. 6 stated in the final paragraph, "You, however, should consider *all of the evidence* in the case in determining whether the defendant acted in lawful self-defense." (emphasis added). It is not evident from the *Beck* opinion that this paragraph was included in the self-defense instruction in that case. This paragraph alone distinguishes the case at bar from *Beck*. The jury in the case at bar was instructed to not only consider the evidence of Randy's acts, but also to consider *all* of the evidence.

In addition, Appellant cannot succeed even when considering his claim in Point II that the trial court impermissibly allowed the State to misstate the law when it remarked in closing argument that the jury could only consider the acts of Randy in determining whether Appellant acted in lawful self-defense.

The State did not misstate the law of self-defense, as applied to the facts of this case, because the State never argued that the jury could *only* consider the acts of Randy. In summation, the prosecutor merely argued the State's version of the facts that Randy was not in the fight. It concluded,

> The self defense argument. Unless you find that [Appellant] reasonably believed he was in imminent danger of harm from Randy Baldwin, he is—he is not entitled to stab Randy Baldwin.
>
> . . . .
>
> [Appellant] was in fear of substantial harm from Randy Baldwin. Not from Mike or from Corey. This isn't about Mike or Corey's case. This is about when he approached and stabbed Randy Baldwin. What did Randy do to justify being stabbed by [Appellant]? Was it being drunk that day? Is it where

you're going to say, Well, if you're drunk, you deserve it. Because we don't have any outward sign that Randy ever swung or ever did anything to [Appellant] before he stabbed him.

Contrary to Appellant's assertions, this argument by the State did not prevent the jury from giving full effect to Appellant's defense. The focus in self-defense cases is whether the defendant had a reasonable belief that the victim was going to use or imminently going to use unlawful force against the defendant to cause harm or injury. Section 563.031.1. Thus, the central focus in self-defense cases is between the defendant and the victim. *Beck*, 167 S.W.3d at 786. In line with this "focus" is that the "reasonable belief" that the victim is going to use or imminently going to use force may be caused by the actions of multiple assailants. This is what the definition of "reasonable belief" in pattern instruction MAI–CR 3d 306.06 speaks to when it uses the words "same situation." Moreover, Instruction No. 6 in the case at bar instructed the jury to consider *all* of the evidence in determining the issue of self-defense.

In this sense, the State in its closing argument did not contradict the substantive law of self-defense. The State never instructed the jury that it could not consider the actions of Mike or Corey, or any of Randy's alleged associates for that matter. The State only stressed to the jury that Appellant's fear of harm must have been directed at what Randy was planning to do to him, even though the actions of Randy's associates could have contributed to this fear of what Randy was going to do. Lawful self-defense required Appellant to reasonably believe Randy was using, or imminently going to use, unlawful force against him. Section 563.031.1; *see Beck*, 167 S.W.3d at 786 ("[I]t is clear that § 563.031.1 limits the use of physical force

against the victim by the defendant to a response to the use or imminent use of unlawful force by the victim and the victim alone...").

The focus here is between Appellant, the defendant, and Randy, the victim. The State only told the jury to focus on this substantive law, that, in essence, the reasonable fear must be from what Randy was going to do to Appellant. The reasonable fear, under the substantive law of self-defense, may stem, however, from the acts of Randy's associates, the multiple assailants. But the fear, no matter where it derives from, or what contributes to cause it, must ultimately be a fear of danger from the victim. And in this case, the jury was never restricted from considering what Randy's alleged associates were doing before and up to the time of the stabbing, nor did the State tell the jury to not consider those actions.

The prosecutor's statement in *Beck* is distinguishable because in that case the jury was told that "the Court's instruction ... only relates to what [the victim] did." *Id.* at 771. This was an incorrect statement of law because MAI–CR 3d 306.06 defines the "reasonable belief" of the defendant as "grounds which could lead a reasonable person in the *same situation* to the same belief." MAI–CR 3d 306.06 Part A[4] (emphasis added). Thus the "reasonable belief" of the defendant relates to everything going on in the *situation* the defendant was in. Unlike in *Beck,* the jury in the case at bar was permitted to consider *all* of the evidence in determining whether the defendant reasonably believed he was in imminent danger of harm from the acts of Randy.

Moreover, counsel for Appellant, during closing argument, rebutted the State's argument by saying,

[The State] will say, Well, it's nothing to do about Mike. Well, it's nothing to do about Corey. Well, they sure called and testified, didn't they? It has everything to do with Corey Baldwin. It has everything to do with Mike Bounous. It has everything to do with Fred Bounous. And it has everything to do with Randy Baldwin.

This is a four on two assault. That's what it is. You can't just take one of them out of it and say, Oh, ignore the other three, let's just focus on the one guy. This was four guys attacking two guys. What all four of them were doing is what this case is about. It's not just what Randy Baldwin did, but what all of them did.

Even though the State never misstated the law in its closing argument, counsel for Appellant reiterated the law by telling the jury that the acts of Randy's alleged associates could be considered in determining self-defense:

When can somebody defend themselves? The law exists for a reason. And it says if you have a reason to defend yourself, if you have a reasonable belief that you're in harm or your family's in harm or another person is in harm, you can defend yourself. And that's what we have here. We have [Appellant] on his property being attacked by four people, armed with weapons, beating him up and beating his brother up. And, yes, he responded.... The evidence is that that's what he had to do. The evidence is there's four people, that's two on one, with weapons, with pipes, and with chains, and with bricks. And so he used a weapon of his own.

There was no error in Instruction No. 6, nor did the prosecutor misstate the law of self-defense to the jury. We do not believe the jury was misled on the substantive law and, thus, there was no manifest injustice in instructing the jury on self-

**624**

defense. Appellant's Points II and III are denied.

■ Although Appellant's convictions are affirmed, it is noted that the record contains a judgment in the form of a "check the box"-style document, entitled "Sentence and Judgment." In the section used to mark whether Appellant was found to be guilty of the crimes of assault in the first degree and armed criminal action, the boxes checked for both crimes state that Appellant was "[f]ound guilty upon a plea of guilty." There is no question that Appellant did not plead guilty in this case, but instead was found guilty by a jury. This is clearly a clerical mistake.

In addition, on page two of the written "Sentence and Judgment," the boxes are checked showing that Appellant's twenty-year sentence for the assault conviction runs concurrent with his five-year sentence for the armed criminal action conviction, and vice versa. However, in open court and on the record, the trial court at the time of sentencing stated,

> [I]t will be the Sentence and Judgment of this Court that [Appellant] be sentenced to a term of 20 years in the custody of the department of corrections on Count I of the Information and five years in the custody of the department of corrections on Count II of the Information with the sentence on Count II to run consecutively to the sentence on Count I.

■ "As a general rule, where there is a material discrepancy between the oral pronouncement of the trial court's judgment and sentence, and the written judgment entry, the oral pronouncement controls." *Beck,* 167 S.W.3d at 773. This is because the legal force attached to a judgment comes from the court's judicial act and not from a clerical entry into the record. *Id.* "The failure to memorialize accurately the decision of the trial court as

it was announced in open court [is] clearly a clerical error." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App. S.D.2004). " 'Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission.' " *Id. (quoting State v. Booyer,* 87 S.W.3d 926, 931 (Mo.App. S.D.2002)).

The judgment of convictions are affirmed, the cause is remanded for the trial court to correct these clerical errors in order to reflect the judgment and sentence as announced in open court.

PARRISH, and LYNCH, JJ., concur.