

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD82757** |
| v. | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| TRAVON MARCEL WILLIAMS, | ) | **October 6, 2020** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kenneth R. Garrett III, Judge**

**Before Division One:** Thomas H. Newton, Presiding Judge, and
Mark D. Pfeiffer and Edward R. Ardini, Jr., Judges

Mr. Travon M. Williams ("Williams") appeals from the judgment entered by the Circuit Court of Jackson County, Missouri ("trial court"), following a jury trial in which he was found guilty of first-degree involuntary manslaughter and armed criminal action. Williams asserts one point on appeal, arguing that there was insufficient evidence to prove beyond a reasonable doubt that Williams did not act in lawful defense of another. We affirm.

## Facts and Procedural History[1]

The events surrounding the death of Jacobsen Laumoli ("Laumoli") occurred during the Halloween weekend of 2016.

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019) (internal quotation marks omitted).

On the night of October 29, 2016, Tim Humphries ("Humphries") hosted a Halloween party at 20100 East 12th Terrace North. He invited between twelve and thirty guests, including several of his high school classmates, among them Larry Reed ("Reed"), who brought Williams with him to the party.

The same night, across the street at 20105 East 12th Terrace South, Tabitha Hall ("Hall") also hosted a Halloween party. Her guests included: Hall's children's father, Tusi Tu, and his sister, Vaigalepa "Vai" Tu,[2] and Vai's fiancé, Laumoli.

Around 1:30 a.m. on October 30, Tusi left the Hall party on foot to walk to his home. He was wearing a traditional piece of Samoan islander clothing which resembled a skirt. At the same time Tusi was walking home, Josh Carpenter ("Carpenter") stepped outside the Humphries party onto the front porch. He wanted some fresh air, as he and other guests at the Humphries party had been heavily drinking alcohol and using marijuana that night. Carpenter was joined by four others on the porch. Carpenter and the others saw Tusi across the street and yelled pejorative slurs at him. In response, Tusi threw a two-by-four plank board at the porch area of the Humphries home. This resulted in Carpenter and Tusi shouting at one another and, eventually, fistfighting each other. Neither Carpenter nor Tusi was armed with a weapon.

The fistfight between Tusi and Carpenter lasted approximately thirty to forty-five seconds near the porch area of the Humphries home. Carpenter would later describe the fistfight as "tussling," though he also had some difficulty remembering all of the events due to his intoxicated state.

Seeing that Carpenter was on the losing side of the fistfight and the screen from Humphries's front door had been ripped in the ensuing melee, Humphries retrieved his 40-caliber

---

[2] Because Tusi and Vai Tu are siblings with the same last name, this opinion will refer to them by first name for clarity. No familiarity or disrespect is intended.

handgun, which he held at his side in the front room as the yelling and fistfighting ensued. He never saw the need to use or threaten the use of the handgun, however.

Around that time, Laumoli and numerous other party-goers from the Hall party had arrived at the front yard of the Humphries home to remove Tusi from the fistfight and to retreat from the scene. In so doing, Laumoli attempted to shut the front door to prohibit others from coming out while another of his friends was helping Laumoli extricate Tusi from the fistfight.

It was then that Williams grabbed the gun from Humphries's hand without his permission and pointed it out the door, warning he had a gun. Seconds later, when Laumoli had hold of Tusi and was near a tree in the front yard retreating from the porch, Williams fired the handgun twice. The second shot struck Laumoli—it entered his back, pierced his left lung, his heart, his right lung, and then exited his chest. After a few minutes of gasping for air as blood filled his airways, he died of his wounds.

Immediately thereafter, Williams told Humphries, "We got to get rid of this" and tried to give the gun back to Humphries; Humphries refused to take it. Williams then fled the scene in his car. Most of the remaining party-goers from the Humphries party then left shortly thereafter. Carpenter had come back in the house to clean up the blood at and around his face and ear (which later required sutures to repair his ear injury). Humphries looked outside and saw everyone from the party across the street yelling, crying, and frantic as they saw Laumoli lying in a pool of blood.

Officers arrived at the scene and could not find Laumoli's pulse. He was already dead. There was no evidence the gun was fired at close range; there was no stippling or soot on the body. The officers searched the Humphries residence and documented many alcoholic beverage cans, bottles, cups, and what appeared to be marijuana pipes. Humphries reported his handgun stolen to the officers. The gun used in the shooting was eventually recovered by law enforcement.

3

An autopsy revealed that Laumoli died from a gunshot wound *to the back*.

Humphries identified Williams in a photo lineup, and Williams was subsequently arrested and charged with second-degree murder and armed criminal action.

At trial, Williams's defense was that he acted in lawful defense of another and Williams sought judgment of acquittal at the close of all the evidence, which was denied by the trial court. The jury was instructed on the lawful use of force to defend another person; the jury rejected that defense, however, and found Williams guilty of involuntary manslaughter in the first degree and armed criminal action. Williams was sentenced by the trial court in accord with the jury's recommendation.

On appeal, Williams does not challenge the sufficiency of the evidence for the involuntary manslaughter and armed criminal action convictions; instead, he challenges the trial court's ruling on his motion for judgment of acquittal and in entering the judgment of conviction because he asserts that no rational fact-finder could have found the State produced sufficient evidence to show beyond a reasonable doubt that Williams did not act in lawful defense of another.

**Standard of Review**

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal quotation marks omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* (internal quotation marks omitted). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the

4

evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

"'A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense.'" *State v. Clark*, 486 S.W.3d 479, 490 (Mo. App. W.D. 2016) (quoting *State v. Dulaney*, 989 S.W.2d 648, 651 (Mo. App. W.D. 1999)). "Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, whether the defendant acted in [defense of another] is a question for the trier of fact." *State v. Henderson*, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010). "The jury, not the appellate court, is responsible for weighing the reliability and credibility of the witnesses." *State v. Allison*, 845 S.W.2d 642, 645 (Mo. App. W.D. 1992). "'The jury is not bound by defendant's self-serving explanation.'" *Id.* (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). "The jury may choose to accept or reject all, some or none of the testimony of any witness[.]" *Id.*

**Analysis**

"The defense-of-others justification is essentially an extension of the self-defense justification, in that the actor may do in another's defense anything the person himself may have lawfully done in the circumstances." *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012). Section 563.031.1[3] provides in pertinent part:

> A person may, [subject to certain limitations not relevant to this appeal], use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person . . . .

---

[3] All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

A person is prohibited from using deadly force in self-defense unless, among other restrictions not relevant to this appeal, "[h]e or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony[.]" § 563.031.2(1). "Once the defendant has injected the issue of self-defense into the case, the burden shifts to the state to prove the absence of self-defense beyond a reasonable doubt." *Henderson*, 311 S.W.3d at 414 (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence for a reasonable juror to believe that Williams did not reasonably believe that deadly force was necessary to protect Carpenter against death, serious physical injury, or any forcible felony.

The confrontation between Tusi and Carpenter was a war of words turned fistfight that, according to Humphries and other witnesses, lasted thirty to forty-five seconds. There is no factual dispute that Tusi was not armed. Carpenter himself described the confrontation with Tusi as "tussling." Tusi admitted to the confrontation, said he hit Carpenter, and then that they were "scuffling" and that he "got into it with everybody [he] could reach."

> Words alone are insufficient to support a claim of self-defense. Neither is deadly force justified in response to fear of being grabbed *or even punched*. At best, [defendant] showed a fear of a simple assault or battery, but *deadly force cannot be used to repel a simple assault and battery*.

*State v. Bruner*, 541 S.W.3d 529, 538 (Mo. banc 2018) (emphasis added) (citations omitted) (internal quotation marks omitted).

Vai testified that Laumoli was on the steps to the porch, grabbing Tusi, pulling him away by the shirt, and trying to close the door when the first gunshot went off, and by the time the second shot went off, they were in the yard retreating away from the house, when Laumoli was hit with the bullet that killed him, *in the back*. The evidence demonstrated that Laumoli was *not* shot at

6

close range, again consistent with the fact that Laumoli and Tusi were attempting to withdraw from the confrontation, not re-escalate it as Williams would like this Court to believe.

Furthermore, the evidence of Williams's conduct following the shooting is relevant. Immediately after firing the shots, Williams was described as "freaking out" and panicking. Williams looked at Humphries and said, "we got to get rid of this[,]" about the gun. Williams tried to hand the gun to Humphries, but Humphries refused. This conduct by Williams would support a reasonable juror's belief that Williams did not feel the shooting was justified, but rather that he was conscious of his guilt, desiring to conceal the offense or his role as the shooter. *State v. Webb*, 569 S.W.3d 530, 541 (Mo. App. W.D. 2018). Williams fled the scene when he saw Laumoli lying in a pool of his own blood. Williams's flight after the shooting is further evidentiary support for a finding that he was conscious of his guilt, not that the shooting was justifiable in defense of Carpenter. "A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein." *Id*. (internal quotation marks omitted).

Although Williams disregards our lens of factual review and attempts to paint the events and accounts of the night differently in his appellate brief, his argument merely illustrates that there was conflicting evidence and that different inferences could reasonably be drawn from the evidence. *Henderson*, 311 S.W.3d at 414. This illustration, however, supports the contrary of Williams's argument, showing that he was *not* entitled to acquittal as a matter of law, but rather, that the question of whether he was justified in acting in defense of another was a question of fact for the jury to decide. *Id.*

The jury rejected Williams's version of the shooting, and it was within its province to do so. Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence

7

to allow a reasonable juror to find beyond a reasonable doubt that Williams did not act in defense of Carpenter when he shot Laumoli. Accordingly, Williams was not entitled to acquittal as a matter of law on the basis that he shot Laumoli in defense of Carpenter. The trial court did not abuse its discretion in denying Williams's motion for judgment of acquittal at the close of all the evidence and in entering judgment of conviction.

Williams's point on appeal is denied.

## Conclusion

The trial court's judgment is affirmed.


/s/*Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge, and Edward R. Ardini, Jr., Judge, concur.

8