**STATE of Missouri, Respondent,**

v.

**Deandre L. POINTER, Appellant.**

**No. WD 66311.**

Missouri Court of Appeals,
Western District.

Feb. 27, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Susan L. Hogan, Appellate Defender, Kansas City, MO, for appellant.

Before: HOWARD, C.J., and BRECKENRIDGE and SPINDEN, JJ.

VICTOR C. HOWARD, Chief Judge.

Deandre L. Pointer was convicted after a jury trial of one count of murder in the first degree, one count of murder in the second degree, and two counts of armed criminal action. Pointer's sole point on appeal is that the trial court erred in overruling his *Batson* objections. We do not find that the ruling of the trial court was clearly erroneous. The judgment of the trial court is affirmed.

**Procedural and Factual Background**

Deandre L. Pointer ("Pointer") was charged by indictment in Jackson County as a persistent felony offender with murder in the first degree for the murder of Bobby Roby, murder in the second degree

for the murder of Angela Ray, and two counts of armed criminal action. After a trial by jury, Pointer was found guilty of all of the charged offenses.

Following voir dire, Pointer raised *Batson* challenges [1] to the State's peremptory strikes of Jacqueline Collins ("Collins"), Samuel Rodriguez ("Rodriguez"), and Richard Gatewood ("Gatewood"). Collins and Gatewood were African–American, like the defendant and victims, and Rodriguez was Hispanic. The State's explanation for striking Collins was based on the fact that she had previously been a Jackson County jail guard, explaining "[w]e never quite know where to go with jail guards," and because she had strong personal feelings regarding a prison sentence her nephew had received. The State explained it had moved to strike Gatewood based on his employment at a casino. The prosecutor stated that he always struck anyone who worked for a casino and had never had a jury with a casino worker. As for Rodriguez, the State based its strike on the fact that he had three family members in jail for homicide and an uncle that was a victim of homicide. The prosecutor noted that was "one of the most I've ever had on a jury panel" and that it was "a little too close to home."

The judge noted her concern with the fact that if all of the State's strikes were upheld, the jury would not contain any minorities. The State then withdrew its strike of Gatewood and replaced it with another strike. The trial judge denied the remaining *Batson* challenges to Collins and Rodriguez and the trial continued.

## Standard of Review

A trial court's ruling in a *Batson* challenge is "entitled to great deference on appeal" and will be reversed only if "clearly erroneous" leaving "the definite and firm impression that a mistake was made." *State v. Cole*, 71 S.W.3d 163, 172 (Mo. banc 2002). Because weighing the legitimacy of the State's explanation for a peremptory strike is, by nature, a subjective exercise, "we place great reliance in the trial court's judgment." *State v. Morrow*, 968 S.W.2d 100, 114 (Mo. banc 1998) (citing *State v. Antwine*, 743 S.W.2d 51, 65 (Mo. banc 1987)). Deference is given to the trial court's decision because the "evaluation of the prosecutor's ... credibility lies 'peculiarly within a trial judge's province.'" *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (citations omitted). Thus, trial judges are "vested with considerable discretion in determining whether the defendant established purposeful discrimination." *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992).

## Discussion

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002). There are three steps to a *Batson* challenge. *Parker*, 836 S.W.2d at 933. First, the defendant lodges a *Batson* challenge. Next, the State must come forward with a race-neutral explanation for the strike. In the third step, the defendant carries the burden to prove that the expla-

---

1. A *Batson* challenge is based on the United States Supreme Court holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that striking jurors based on race violated the equal protection clause of the United States Constitution. A defendant may establish a prima facie case of purposeful discrimination in the selection of a jury based on the prosecutor's exercise of peremptory challenges.

nation was pretextual and, in fact, the true reason for the strike was purposeful racial discrimination.

"The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). " 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* at 768, 115 S.Ct. 1769 (citations omitted). "It is not until the *third* step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* (citations omitted).

■■■ When considering whether a reason is pretextual, four factors are considered. *State v. Strong,* 142 S.W.3d 702, 712 (Mo. banc 2004). Factor one is the presence of " 'similarly situated white jurors who were not struck.' " *Id.* (citation omitted). "This factor is not conclusive but is 'crucial' in determining pretext." *Id.* The next factor is the " 'degree of logical relevance between the proffered explanation and the case to be tried.' " *Id.* (citation omitted). The third factor is "the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with that prosecutor." *Id.* The fourth factor is "the demeanor of the excluded venireperson." *Id.* When considering the issue of pretext, the trial court should consider the " 'totality of the facts and circumstances surrounding the case.' " *Id.* (citation omitted).

On appeal, Pointer disputes the trial court's ruling on his *Batson* challenges regarding Collins and Rodriguez.

### Collins *Batson* Challenge

■■ Pointer argues that the State's strike of Collins was racially motivated and its reason for the strike was pretextual because there was nothing about the case that made it logically relevant to exclude her; that after the trial court expressed concern about the State's strikes, the State withdrew one, thus affecting its credibility; and there was no indication that Collins could not be fair and impartial.

The first argument Pointer makes in regard to Collins is that the State's strike was not logically relevant. Following the *Batson* challenge, the State gave its reason for striking Collins based on the statements she had made regarding her past employment as a jail guard and her strong feelings regarding a sentence a family member had received. Collins had previously been a corrections officer for Jackson County. When questioned about incarcerated family members, Collins responded that she felt her nephew had received too much time because it was his first offense.[2] She stated that she had strong feelings about the sentence.

■■ First, in regard to her previous employment as a corrections officer, "[e]mployment is a valid race-neutral basis for striking a prospective juror." *State v. Williams,* 97 S.W.3d 462, 472 (Mo. banc 2003). Following the *Batson* challenge, the State referenced its discussions of Collins during the "for cause" strike and also noted that "you never know where to go with jail guards." Quite possibly this reason alone could have been enough to survive the *Batson* challenge, but we will also consider this explanation together with the

---

**2.** He was apparently sentenced to seventeen years for robbery.

State's concern regarding her strong feelings about her nephew's sentence.

 It is important that "the explanation provided by the State was related to the case to be tried, clear and reasonably specific, and legitimate." *State v. McFadden*, 191 S.W.3d 648, 655 (Mo. banc 2006). Collins's expression that she had strong feelings regarding what she obviously felt was an unfair sentence could legitimately play a role in the case and represents a race-neutral reason for concern on the part of the State. A personalized dissatisfaction with the judicial system and the harshness of a sentence "could affect her ability to neutrally assess the evidence." *State v. Brown*, 958 S.W.2d 574, 582 (Mo.App. W.D.1997). The trial court decided not to strike her for cause because she only had strong feelings about an individual sentence. However, "the justification for peremptory strike need not rise to the level of justification for a challenge for cause." *State v. Jones*, 979 S.W.2d 171, 185 (Mo. banc 1998). Given her past employment and her feelings regarding the prosecution of her nephew, the trial court did not clearly err in denying Pointer's *Batson* challenge.

Pointer next argues that the State's credibility was affected based on its strike of the three remaining minorities[3] and the State's decision to change one of its strikes after the judge expressed her concern. The State originally moved to strike Collins, Rodriguez, and Gatewood. The reason offered by the State in striking Gatewood was the fact that he worked for a casino. The State explained that he always struck anyone who worked for a casino. After the trial court expressed concern about having an all-white jury, the State withdrew its strike of Gatewood and replaced him with another potential juror. Again, "[e]mployment is a valid race-neutral basis for striking a prospective juror." *Williams*, 97 S.W.3d at 472. However, because the State withdrew the strike of Gatewood, and Pointer did not continue with any *Batson* challenge in regards to Gatewood, nothing is preserved for appeal.

In this case, the trial judge never indicated a belief that the State was discriminating in its strikes. She merely expressed her discomfort. *See State v. Taylor*, 18 S.W.3d 366, 374–73 (Mo. banc 2000) (fact that trial judge noted discomfort with an all-white jury for a black defendant showed that judge was basing a decision on totality of the circumstances; denial of *Batson* challenge was affirmed). Because the trial court has the opportunity to observe the State during voir dire we afford her "great deference to such a finding since the finding turns largely on an evaluation of credibility." *State v. Maynard*, 954 S.W.2d 624, 635 (Mo.App. W.D.1997). "The trial court had the opportunity to observe the prosecutor's demeanor and to assess his credibility and found the prosecutor's reason legitimate." *Id.* at 636. As previously noted, "[h]aving articulated a reason that was not racially motivated," the fact that Collins had been a corrections officer and had strong personal feelings regarding a criminal sentence, "the prosecution satisfied the mandates of the Constitution." *Id.* The trial court did not err in overruling the *Batson* challenge.

Pointer also argues that Collins did not give any indication that she could not be fair and impartial. However, this observation is of little value. At that stage of voir dire, the entire panel had survived challenges for cause and demonstrated they

---

**3.** Based on the record before us, it appears that there had been more minority venirepersons prior to strikes for cause and prior to asking for each side's peremptory strikes, the judge limited the panel to jurors 1 through 34 with the alternates being from jurors 35 to 44.

could be fair and impartial. Based on the record before us, we do not find that the trial court clearly erred in its holding. Therefore, the trial court's denial of Pointer's *Batson* challenge to the striking of Collins is affirmed.

### Rodriguez *Batson* Challenge

■ Pointer argues that the State's strike of Rodriguez was merely pretextual and racially motivated because there were similarly situated white jurors who were not struck; there was nothing about the case that made it logically relevant to exclude him; that after the trial court expressed concern about the State's strikes, the State withdrew one, thus affecting its credibility; and there was no indication that Rodriguez could not be fair and impartial.

Pointer argues that there were white jurors who, like Rodriguez, had family members who were incarcerated. Although this statement is true, a closer look at Rodriguez and the other jurors who were not struck shows that they were not at all "similarly situated." During voir dire, Rodriguez stated he had two cousins and an uncle incarcerated for murders in Jackson County. He also had an uncle that was murdered in Jackson County. Pointer lists four "similarly situated" white jurors:

(1) Juror 1: Husband's nephew was incarcerated for mishandling of funds somewhere in northern Missouri.

(2) Juror 4: Cousin in jail for murder, but didn't know in what state and was approximately 10 years ago.

(3) Juror 14: Cousin served 120 days for a drug charge.

(4) Juror 15: Daughter serving 120 days for a drug charge.

Although all four of these jurors did in fact have family members incarcerated, none of their experiences were comparable to Rodriguez's. Three main differences stand out: all of Rodriguez's family members were in jail for murder; all of the murders were in Jackson County, where the trial was being held; and the sheer number of family members involved. Although Juror 4 did have a cousin in jail for murder, it was not in Jackson County. Clearly, none of these jurors were truly "similarly situated" to Rodriguez. *See McFadden*, 191 S.W.3d at 651. The trial court did not clearly err in denying Pointer's *Batson* challenge based on similarly situated white jurors who were not struck. *See also State v. Turner*, 921 S.W.2d 658, 662 (Mo. App. W.D.1996) (venireperson struck because a family member was in prison is a race-neutral reason).

Pointer also argues that the State's strike of Rodriguez was pretextual and racially motivated because it was not logically relevant. As previously discussed, it is important that "the explanation provided by the State was related to the case to be tried, clear and reasonably specific, and legitimate." *McFadden*, 191 S.W.3d at 655. The stated reason for striking Rodriguez was the number of family members affected by murder. This case was a murder case being prosecuted by the same staff that prosecuted his family. Obviously, this strike was logically relevant. The trial court did not clearly err in denying Pointer's *Batson* challenge.

The final two arguments that Pointer makes regarding Rodriguez's strike are the same as those made regarding Collins. As previously discussed, Pointer does not meet his burden of showing that the trial court clearly erred in denying the *Batson* challenges. The judgment of the trial court is affirmed.

BRECKENRIDGE and SPINDEN, JJ., concur.