STATE of Missouri, Respondent,

v.

Marlow J. JOHNSON, Appellant.

No. ED 87550.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 13, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 12, 2007.

Application for Transfer Denied
May 29, 2007.

Jessica Hathaway, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, SR., Judge.

Appellant, Marlow J. Johnson ("Defendant"), appeals from the judgment of the Circuit Court of the City of St. Louis, following a jury trial, finding him guilty of three counts of assault of a law enforcement officer in the first degree, section 565.081, RSMo 2000,[1] three counts of armed criminal action, section 571.015, and one count of tampering in the first degree, section 569.080. Defendant was sentenced as a persistent offender to six concurrent terms of twenty-five years' imprisonment for the assault and armed criminal action convictions and one concurrent term of five years' imprisonment for the tampering conviction. We affirm in part and reverse and remand in part.

On August 26, 2004, at approximately 1:00 a.m., two City of St. Louis police officers, Officer Paul Piatchek ("Officer Piatchek") and Officer Wilson, observed a Chevy Silverado truck ("truck"), which they believed to have been stolen. Officer Piatchek ran the license plate and learned that it had been stolen. They alerted other officers of their location and situation.

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

Officers Piatchek and Wilson, who were in plain clothes and an unmarked vehicle, pulled behind the truck and followed it into the McDonald's drive-thru at Natural Bridge Road and North Kingshighway. Officer Eric Bartlett ("Officer Bartlett") and Officer Tom Zipf, Jr. ("Officer Zipf") then pulled into the parking lot. Officer Zipf, who was also in plain clothes, approached the truck from the rear and placed spike strips under the tires so when the vehicle advanced it would run over the spike strips and deflate the tires.

The truck pulled forward and to the right over the spike strips. The truck drove around the McDonald's with its tires spinning and eventually spun around 180 degrees. As it did this, Officer Piatchek was able to observe the driver of the truck, whom he subsequently identified as Defendant. Officer Zipf chased the vehicle yelling, "stop, police!" The passenger of the truck, James King ("King") leaned out of the window, pointed a semiautomatic handgun, and began firing at Officer Zipf. Officer Zipf drew his weapon and returned fire. Officer Bartlett also began firing on the truck.

Detective Dave Bonnenburger ("Detective Bonnenburger") and Detective Dan Drago ("Detective Drago") then arrived in an unmarked vehicle and pulled between the truck and Officer Zipf, allowing Officer Zipf to enter their vehicle. Defendant drove toward the exit and King ducked down in the truck. Meanwhile, two other officers who had arrived on the scene had placed a second set of spike strips down, which Defendant drove over.

Defendant exited the parking lot and was driving on Natural Bridge Road when the truck spun out again. Numerous officers approached the truck and Officer Bartlett yelled, "police!" They ordered Defendant and King to exit the truck and Detective Drago, with his gun drawn,

yelled, "police . . . let me see your hands." Defendant put his hands out the window and, as Detective Drago approached, King popped up in the truck and began firing at him. Detective Drago returned fire and Defendant pulled his hands back into the truck, placed them on the steering wheel, and drove forward toward Officer Bartlett. During this time, King was still shooting out the window and Officer Bartlett was returning fire.

Defendant then drove the truck toward a business driveway while King continued to shoot, this time toward Officer Piatchek, who was firing back. Defendant drove the truck into a lot, through a fence, and over an embankment. Officers followed. The occupants of the truck, Defendant, King, and another individual, exited the truck and fled on foot. Officer Zipf and Detective Bonnenburger arrested Defendant on a front lawn, as he attempted to hide. Defendant suffered gunshot wounds to the back and shoulder and officers later learned that King had been also shot. Officers retrieved a .45 caliber semiautomatic handgun, covered with King's blood, and several nine millimeter, and .45 caliber shell casings, bullets, and copper jackets.

The trial court conducted a jury trial and the jury convicted Defendant. The trial court then entered judgment against Defendant, for three counts of assault of a law enforcement officer in the first degree, section 565.081, RSMo, three counts of armed criminal action, section 571.015, and one count of tampering in the first degree, section 569.080. The trial court sentenced Defendant as a persistent offender to six concurrent terms of twenty-five years' imprisonment for the assault and armed criminal action convictions and one concurrent term of five years' imprisonment for the tampering conviction. Defendant filed a motion for a judgment of acquittal or in the alternative a new trial, which the trial

court denied. This appeal by Defendant followed.

■ In his first point on appeal, Defendant alleges that the trial court erred in denying his *Batson* challenge to one of the State's peremptory strikes because the prosecutor's reasons for the strike were discriminatory.

The United States Supreme Court held that a defendant makes a prima facie case of discriminatory jury selection by looking at "the totality of the relevant facts" of the prosecutor's behavior during trial. *Batson v. Kentucky,* 476 U.S. 79, 93–94, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Missouri Supreme Court set forth a three-part procedure to determine whether a *Batson* violation occurred. *State v. Parker,* 836 S.W.2d 930, 939 (Mo.banc 1992). First, a defendant must challenge one or more specific veniremen struck by the State and identify the cognizable protected class to which they belong; second, the State must provide a nondiscriminatory reason amounting to more than an unsubstantiated denial of discriminatory purpose; and third, the defendant must show that the State's explanation was merely pretextual and the true reason for the strike was racial. *Id.*

■ In order for a defendant to prove that the proffered explanation by the State was pretextual, the defendant can present comparisons of veniremen allegedly struck for racially discriminatory reasons with veniremen who served on the jury. *State v. McFadden,* 191 S.W.3d 648, 651 (Mo.banc 2006). A defendant proves purposeful discrimination when the proffered reason for striking a venireman applies to a similarly situated venireman who served on the jury. *Id.* The trial court must consider "the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *Id.* The trial court's findings will be set

aside only if they are clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.*

In the instant case, the State peremptorily struck five African–American veniremen on the panel. The racial composition of the panel is unclear from the record, but the State alleges in its brief that after strikes for cause there were 28 veniremen remaining and more than half were African–American. (The racial composition of the seated jury is also unclear from the record.)

One of the African–Americans struck by the State was venireman Belinda Lockhart ("Lockhart"). Defendant made a *Batson* challenge to the State's use of that strike. When the trial court asked the prosecutor why he struck Lockhart, he responded:

> Prosecutor: ... Miss Lockhart had a situation where she believed police bungled her car burglary. And she was very flippant about, well, a number of answers. But I believe that she had some negative impressions of the police based upon her response to that question and the manner when she responded. I think she said a family—is it a family member arrested for the car burglary[?]

> Court: Well, there have been a number of—I think my notes indicate a number of car burglaries, but why would that be of concern to you?

> Prosecutor: I thought that perhaps my notes indicated, in reading it, Your Honor, looks like they were victims. Sometimes I mistake [sic] when I write down the crimes that they were participants.

> Court: What was the record here? Now what are you trying to show the record? I don't understand.

Prosecutor: The first part of my response, Your Honor, which was that she indicated that the police had bungled—I think that's the term that she used—a matter, a criminal matter that she was involved in. And she was rather flippant about it. Makes me think that she still holds somewhat of a negative impression about the police.

Court: I will allow the strike. It's race and gender neutral.

Defense Counsel: I would like to object, Judge. It's not what she said. She said someone stole something from her. She got it back and it was a family member, so she didn't prosecute. She doesn't mention anything about the police bungling it.

Court: Now I do recall that. That's right. That's right.

Prosecutor: She said she had to do the work instead of the police. And that she was very negative about the police.

Court: Yes. I understand. I understand. I recall the whole scenario now. All right. I'll allow the strike. All right.

We note that the prosecutor gave two reasons for striking Lockhart: her statement that the police "bungled" a car burglary investigation and her perceived "flippant" attitude revealed in many of her answers. Defendant objected to the prosecutor's first reason, but not the second. Defendant never objected to or contradicted the prosecutor's statement that Lockhart was flippant, and it was that attitude that led him to believe that Lockhart possessed a negative attitude about the police.

Regarding the State's first reason for exercising the challenge against Lockhart—that the police "bungled" a car burglary investigation—Defendant objected that that was not what Lockhart stated. This was what actually transpired during voir dire:

Q: Miss Lockhart?

A: Yes.

Q: Do you work—you said you work for Wal–Mart?

A: Yeah.

Q: Okay. How long have you been working there?

A: Five years.

Q: As a cashier?

A: Cashier stocker.

Q: You ever have the opportunity to stop a shop lifter?

A: No. I just call for whoever you are supposed to call.

Q: Okay. You let them handle it?

A: Yeah.

Q: All right. Fair enough. Have you ever served on a criminal jury or a civil jury?

A: Uh-huh.

Q: Which one?

A: I don't remember. That was three years ago.

Q: Three years ago. Do you remember if this case came to a verdict or verdict or a finding?

A: Yes, we did.

Q: And you marked down that you were a victim of a crime. What did that have to do with?

A: Somebody had stole my van.

Q: Did you get it back?

A: Uh-huh. Yes.

Q: Police get it for you?

A: Yes.

Q: Did they catch the guy that stole it?

A: Yes.

Q: Did you prosecute him?

A: No. He was a family member.

Q: Thanks, Miss Lockhart.

Thus, Defendant contends that the trial court erred in denying his *Batson* motion because the reason given by the prosecutor was not an accurate representation of what Lockhart said during voir dire.

But the accuracy of the given reason is not dispositive. *State v. Bass*, 81 S.W.3d 595, 611 (Mo.App. W.D.2002). In that case, the State struck the only African–American venireman on the panel. *Id.* at 608. The trial court affirmed the strike, despite wanting to keep the venireman on the panel, because the State proffered a race-neutral reason for the strike. *Id.* at 609.

Defense counsel argued on appeal that the reason given by the State was not accurate because it was not what the struck venireman actually said and, in fact, the venireman never even responded to the question at issue. *Id.* at 610. But the Western District held that

[t]he fact that [the venireman] never actually gave the voir dire response on which the State relied for its strike is not determinative of the issue that we must decide[.] ... The issue ... is not whether the reason given for a strike is true in fact, but whether the striking party believes it to be true, even if only a hunch, and the strike is not inherently racial on its face. *Id.* at 611.

Thus, the demeanor of the attorney exercising the strike is more determinative on this issue than the accuracy of the proffered reason. *Id.* Additionally, the court stated that there was no evidence that the State had intentionally misrepresented the record in order to give a race-neutral reason for the strike. *Id.*

In addition, it is important that reviewing courts give great deference to trial courts on this issue. *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 977, 163 L.Ed.2d 824 (2006) (Breyer, J., concurring). Justice Breyer's comment is instructive to this case:

[T]he case before us makes clear that ordinary mechanisms of judicial review cannot assure *Batson's* effectiveness. The reasons are structural. The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying *Batson*. *Id.* at 976–77.

In this case, it is undisputed that one of the prosecutor's proffered reasons for the strike was not borne out by the record. Lockhart did not say that the police could not find her stolen vehicle so she did it herself; she did not say that the police "bungled" the investigation; and she did not say that she had negative feelings toward the police. But that is not dispositive as to whether the State discriminated in its use of the peremptory challenge.

Tone of voice and demeanor cannot be gleaned from a transcript, so appellate courts defer to the trial court's findings. *See Bass*, 81 S.W.3d at 611. This court cannot, on a cold record, verify whether Lockhart was "flippant" about her interaction with the police, as the prosecutor claimed. We note that the trial court stated that it recalled the entire interaction and agreed with the prosecutor in allowing the strike. Moreover, we cannot determine from the record the demeanor of the prosecutor while justifying his strikes.

Hence, we must defer to the trial court's findings.

Moreover, it is Defendant's burden to show that the reasons proffered by the State were merely pretextual. Defendant made no attempt to show that either of the State's race-neutral reasons were mere pretext. Therefore, because the State provided a race-neutral reason for striking Lockhart we conclude that the trial court did not clearly err in denying Defendant's *Batson* challenge.

We note that the dissent relies on Defendant's argument that there were similarly situated white veniremen who were not struck by the State, but Defendant did not raise that argument in order to show pretext in either the *Batson* hearing or his motion for a new trial. Thus, because Defendant raised that argument for the first time on appeal, we decline to consider it. *See State v. Winfield,* 5 S.W.3d 505, 515 (Mo.banc 1999). Point denied.

■ In his second point on appeal, Defendant alleges that the trial court plainly erred in sentencing Defendant as a persistent offender when the court previously announced that Defendant was a prior offender. Thus, Defendant contends that his sentence is void because it is outside of the lawful range of punishment permitted for his offenses.

■ Defendant concedes that because he neither objected to his sentence at trial nor raised this issue in his motion for a new trial our review of this point is for plain-error. Under the plain-error standard, in order to reverse there must be plain error affecting a substantial right that results in manifest injustice or miscarriage of justice. Rule 30.20. Plain errors are evident, obvious, and clear and the existence of such errors are determined by the facts and circumstances of each case. *State v. Johnson,* 150 S.W.3d 132, 136 (Mo.

App. E.D.2004). Plain error review is to be used sparingly. *State v. Knese,* 985 S.W.2d 759, 770 (Mo.banc 1999). A defendant bears the burden of demonstrating that the error prejudiced him and that such prejudice rose to the level of a manifest injustice or miscarriage of justice. *State v. Beggs,* 186 S.W.3d 306, 311 (Mo. App. W.D.2005).

Under section 558.016.1,

"[t]he court may sentence a person who has pleaded guilty to or has been found guilty of an offense ... to a term of imprisonment authorized by a statute governing the offense, if it finds the defendant is a prior offender ... or to an extended term of imprisonment if it finds the defendant is a persistent offender[.]" Section 558.016.1.

"A 'prior offender' is one who has pleaded guilty to or has been found guilty of one felony." Section 558.016.2. "A 'persistent offender' is one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016.3.

Additionally,

[t]he court shall find the defendant to be a prior [or] persistent offender ... if: (1) The indictment or information, original or amended, ... pleads all essential facts warranting a finding that the defendant is a prior [or] persistent offender ...; and (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior [or] persistent offender ...; and (3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior [or] persistent offender[.] Section 558.021.1.

In this case, Defendant was convicted on January 17, 2003 of three counts of felony

stealing over $750 and one count of felony stealing a credit card. The first two offenses of stealing over $750 occurred on May 21, 1999 and May 22, 1999. The third offense of stealing over $750 occurred on July 29, 2001 and the offense of stealing a credit card occurred on July 28, 2001. Therefore, because Defendant has four prior felony convictions that were committed at different times, under section 558.016.3 he is eligible to be sentenced as a persistent offender.

As a general rule, if there is a material discrepancy between the oral pronouncement of the trial court's judgment and sentence and the written entry of judgment, the oral pronouncement controls. *State v. Goodine*, 196 S.W.3d 607, 624 (Mo.App. S.D.2006). This is because the legal force attached to a judgment comes from the court's judicial act, not from a clerical entry in the record. *Id.* Thus, the failure to accurately memorialize the trial court's judgment as announced in open court is a clerical error. *Id.*

"But where the formal oral pronouncement of sentence is ambiguous ... nothing prevents an appellate court from examining the entire record to determine if the oral sentence can be unambiguously ascertained." *Johnson v. State*, 938 S.W.2d 264, 265 (Mo.banc 1997).

In this case, during a break in the trial, the court heard the State's motion to have Defendant sentenced as a persistent offender. (The State had pled in the amended information that Defendant was a persistent offender.) The State presented certified copies Defendant's four prior felony convictions to the court. The State moved to admit the certified copies into evidence and the trial court accepted them. The trial court then stated that "[D]efendant is determined by the Court to be a prior felony offender and [if] convicted

subject to any potential sentencing in the case being within the jurisdiction of the Court and not the jury." Neither the State nor Defendant corrected the trial court or asked for an explanation or clarification on whether the court found Defendant to be merely a prior offender or a persistent offender.

The jury convicted Defendant, and at his sentencing hearing the trial court stated: "[Defendant's] been plead [sic] up as prior and persistent because I was just talking with [defense counsel]." That is the only mention during the entire sentencing hearing of the trial court sentencing Defendant as either a prior or a persistent offender. Therefore, we find that the trial court's oral pronouncement of sentence is ambiguous and we will refer to the entire record to determine the proper sentence.

Although the trial court stated that it found Defendant to be a prior offender when it accepted the certified copies into evidence during trial, the facts and the record support a finding that Defendant was a persistent offender. The trial court stated at sentencing that the State had pleaded that Defendant was a prior and persistent offender. Thus, it appears that the trial court recognized that Defendant was a persistent offender and intended to impose sentence accordingly and its statement during trial was merely a misstatement and not a reflection of the court's intent to sentence Defendant simply as a prior offender.

Therefore, because the State, in the amended information, pled that Defendant was a persistent offender, because Defendant was convicted of four prior felonies that he committed at different times, and because the State offered certified copies of those convictions at trial and the trial court accepted them into evidence, we find that the trial court's intention was to sen-

tence Defendant as a persistent offender. Point denied.

In his third point on appeal, Defendant alleges that the trial court erred in sentencing Defendant to twenty-five years' imprisonment for Count I, one of the counts of assault of a law enforcement officer, because it was a count for which the jury acquitted him. The State concedes that the trial court erred in imposing sentence for this count and maintains that the court should have imposed the sentence for the lesser-included charge of assault in the first degree, the charge for which the jury convicted Defendant.

Defendant concedes that because he neither objected to his sentence at trial nor raised this issue in his motion for a new trial our review of this point is for plain-error. Under the plain-error standard, in order to reverse there must be plain error affecting a substantial right that results in manifest injustice or miscarriage of justice. Rule 30.20. Plain errors are evident, obvious, and clear and the existence of such errors are determined by the facts and circumstances of each case. *Johnson*, 150 S.W.3d at 136. Plain error review is to be used sparingly. *Knese*, 985 S.W.2d at 770. A defendant bears the burden of demonstrating that the error prejudiced him and that such prejudice rose to the level of a manifest injustice or miscarriage of justice. *Beggs*, 186 S.W.3d at 311.

Rule 29.12 provides for the correction of clerical mistakes in judgments arising from oversight or omission. Rule 29.12. A nunc pro tunc order may be used to correct clerical errors in a judgment. *State v. Bibb*, 922 S.W.2d 798, 803 (Mo. App. E.D.1996).

In this case, Defendant was charged with one count of assault of a law enforcement officer as against Officer Zipf, but the court also submitted to the jury a lesser-included offense of assault in the first degree. The jury acquitted Defendant of assault of a law enforcement officer, but convicted him of the lesser-included offense. The trial court, however, imposed a twenty-five year sentence on Defendant on Count I, the assault of a law enforcement officer charge, not the lesser-included offense. Therefore, because the trial court erred in sentencing Defendant for the charge of assault of a law enforcement officer, we reverse and remand with instructions to the trial court to correct the sentence and judgment to properly reflect the accurate conviction.

We note, however, that this does not affect the term of sentence imposed by the trial court, as Defendant is a persistent offender, therefore, the term of twenty-five years' imprisonment for the class B felony of assault in the first degree is not outside of the lawful range allowed. *See* section 558.016, RSMo 2004 (stating that the enhanced penalty for a class B felony is any sentence authorized for a class A felony); section 557.021.3 (stating that a class A felony is punishable by death, life imprisonment, or imprisonment for twenty years or more). Point granted.

Based upon the foregoing, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

GEORGE W. DRAPER III, Presiding Judge, Dissents.

ROBERT G. DOWD, JR., Judge, Concurs.

GEORGE W. DRAPER III, Presiding Judge, dissenting.

I respectfully dissent from the majority's opinion regarding its analysis of Marlow Johnson's (hereinafter, "Johnson") *Batson* challenge. I would vote to reverse the trial court's ruling regarding the first

point on appeal and grant Johnson a new trial.

In his first point on appeal, Johnson alleges the trial court erred in overruling his objection to the State's peremptory strike of Venireperson Lockhart, an African–American. Johnson believes the State's strike was motivated by race and thereby denied Venireperson Lockhart's right to equal protection under the law. Johnson argues the State mischaracterized Venireperson Lockhart's response, there were similarly situated white venirepersons selected for the jury panel, and the State used five of its six peremptory strikes to strike African–Americans.

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." *State v. Hampton*, 163 S.W.3d 903, 904 (Mo. banc 2005)(*quoting State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002)). Missouri courts employ a three-step process to resolve a *Batson* challenge. "First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the [S]tate and identify the cognizable racial group to which the venireperson or persons belong." *Hampton*, 163 S.W.3d at 904 (*quoting Marlowe*, 89 S.W.3d at 468; *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)). Second, the party making the peremptory strike must articulate a race-neutral explanation for the strike. *Id.* This explanation "is deemed race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation, and if it would result in a disproportionate removal of minority venirepersons." *State v. Hopkins*, 140 S.W.3d 143, 148 (Mo.App. E.D. 2004). In the third step, "the defendant must demonstrate the [S]tate's proffered reasons were merely pretextual and that the strike was racially motivated." *State*

*v. Strong*, 142 S.W.3d 702, 712 (Mo. banc 2004).

This Court will reverse the trial court's determination on a *Batson* challenge only upon a showing of clear error. *State v. Williams*, 159 S.W.3d 480, 483 (Mo.App. S.D.2005); *State v. Barnett*, 980 S.W.2d 297, 302 (Mo. banc 1998). "A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *McFadden*, 191 S.W.3d at 651.

The majority's opinion rests upon the Western District's opinion in *State v. Bass*, 81 S.W.3d 595 (Mo.App. W.D.2002). However, the underlying facts of *Bass* do not correspond to the instant case, and I believe the majority's reliance on *Bass* is misplaced. In *Bass*, the "record reflect[ed] that the appellant did not raise . . . the issue [to the trial court] of whether [the venireperson] had actually given the *voir dire* response relied upon by the State for its strike." *Bass*, 81 S.W.3d at 611. There was no uncertainty from the record in *Bass* "that both the prosecutor and the appellant's trial counsel believed that [the venireperson] had answered affirmatively when asked whether she had faced any problems with her children that she could not solve." *Id.* Both the prosecutor and appellant's counsel were arguing under the *same* mistaken impressions regarding the venireperson's answers. The issue of mistake as to the venireperson's answers was neither discussed nor resolved. Since the appellant failed to lay the foundation for a finding of pretext, she was not allowed to challenge the State's explanation on appeal. *Id.* This fact pattern is not analogous to the one at bar.

In this case, the State used five of its six peremptory challenges to remove African–Americans. The majority refers to the fact that the racial composition of the entire panel and selected jury is unclear from

the record, using a statement from the State's brief to buttress its position. Since the racial composition of the venirepanel and selected jury is not borne out by the record, it is improper to rely upon one of the advocates' briefs alone for accurate information regarding a contested issue. The record does reveal that after defense counsel made his *Batson* challenge, the State was able to readily identify twelve Caucasian venirepersons who were available to strike but who were not stricken.

The majority opinion argues Johnson's claim of pretext in his *Batson* challenge should not be reviewed because it was not raised in his motion for new trial. I disagree. Johnson's motion for new trial states, "The [trial court] further erred in overruling [Johnson's] *Batson* challenges to the State['s] peremptory strikes of ... [Venireperson] Lockhart 452 in that the strikes were racially and gender motivated. The State's reasons were pretextual. This violated the equal protection rights of the jurors to serve on a jury." Clearly, Johnson preserved his argument that the State's reasons were pretextual by raising it in his motion for new trial. I would find the trial court erred in not analyzing the issue of pretext. Such analysis should have included a review of the court reporter's transcript. In this case, such review would have revealed the comments the State attributed to Venireperson Lockhart were in fact attributable to another venireperson.

There are four factors to consider when determining whether the State's proffered reasons were pretextual. "The first factor is the presence of 'similarly situated white jurors who were not struck.'" *Id.* (quot-ing *Marlowe*, 89 S.W.3d at 468).[1] This factor is crucial in determining pretext. *Id.* The record reveals the State failed to strike two white jurors: (1) one of whom was dissatisfied with the police's actions after crimes with his home and car and held the belief that he would hold the State to a higher burden of proof in an accomplice case, and (2) the other held a long criminal record. According to the State's mistaken impressions about Venireperson Lockhart, she was dissatisfied with the police's actions on her case and the police "bungled" her case. Therefore, from the State's perspective of striking similarly situated venirepersons, the State passed over two similarly situated white venirepersons to peremptorily strike Venireperson Lockhart.

The second factor in determining pretext is the "degree of logical relevance between the proffered explanation and the case to be tried." *Marlowe*, 89 S.W.3d at 468. The State chose to strike Venireperson Lockhart even though it appears she would have been a strong juror for the State. Venireperson Lockhart's car was stolen and recovered by the police. She did not state any dissatisfaction with the police nor was her questioning extensive by either attorney; she had no responses to their questions, *inter alia*, regarding dissatisfaction with the criminal justice system, whether a friend or family member had been arrested, or having negative feelings toward police officers. When presenting its race-neutral reasons for striking Venireperson Lockhart, the State misrepresented her comments. Defense counsel objected, attempting to correct the

1. The majority notes Johnson did not raise the argument that similarly situated white venirepersons were not struck by the State in his brief and thereby declined to address this issue. However, the majority fails to comprehend the complete *Batson* analysis. In ana-lyzing whether the State's proffered reasons for a peremptory strike are pretextual, our Court must engage in a four factor scrutiny of the proffered reasons, one of which is whether similarly situated white venirepersons were struck.

record. At this point, the State countered with additional comments attributed to Venireperson Lockhart which were actually comments made by another member of the venire panel.

> The peremptory challenge brings up a tension between two of a prosecuting attorney's ethical duties—the duty zealously to represent the client and the duty to seek justice, not merely to convict. If the enforcement of *Batson* is lax, then it is fairly easy for the prosecuting attorney to let the duty zealously to represent the client override the duty to seek justice. Preventing racial discrimination in jury selection is part of seeing that justice is done. But this part of justice may not be done where the prosecutor believes that justice requires conviction of the defendant, although this belief should not trump other ethical norms.

*Smulls v. State*, 71 S.W.3d 138, 159 (Mo. banc 2002)(Wolff, J., concurring). In this instance, I believe clearly the trial court erred in its agreement to the State's comments.[2]

The third factor is "the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with that prosecutor." *Strong*, 142 S.W.3d at 712. The State's explanation for preemptively striking Venireperson Lockhart was her flippant attitude toward the police. Further, the State conceded that its notes during voir dire are not always accurate in that there are times he would write down that a venireperson was a participant in a crime rather than a victim.

The final factor in determining pretext "is the demeanor of the excluded venireperson." *Id.* "The nature of peremptory strikes is necessarily subjective, and where the evidence before a court is amenable to two competing views, the fact-finder's choice between them cannot be clearly erroneous." *McFadden*, 191 S.W.3d at 659 (Limbaugh, Jr., J., dissenting). However, while falling within the trial court's province to determine fact issues before it, it is clear from the record, in this instance, that the State was mistaken regarding which venirepersons stated they did not like the police.

"[I]t suffices to say that racial profiling, while not exactly invented by trial lawyers, is alive and well in the jury selection process....Once the civil rights movement resulted in elimination of Jim Crow laws enforcing segregation ... the peremptory challenge continued to serve as an efficient final racial filter to ensure all-white juries." *Smulls*, 71 S.W.3d at 158 (Wolfe, J., concurring). "[C]ourts should also review more closely attempts to justify peremptory strikes based upon vague references to a venireperson's attire, demeanor, and similar attributes." *State v. Edwards*, 116 S.W.3d 511, 550 (Mo. banc 2003)(Teitelman, J., concurring). Many times these characteristics merely expose a venireperson to be peremptorily stricken for his or her race rather than his or her ability to serve as a juror. *Id.*

> We do not believe, however, that *Batson* is satisfied by "neutral explanations" which are no more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, *Batson* would be meaningless. It would take little effort

2. This has further implications than just the instant case. The majority opinion states this Court must defer to the trial court's decision regarding demeanor even when the State argues the demeanor of another venireperson rather than the venireperson at issue. This effectively would allow the State to mislead the trial court regarding a venireperson's answers to skirt the effectiveness and rationale of *Batson*.

for prosecutors who are of such a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced *Batson*. *State v. Antwine*, 743 S.W.2d 51, 65 (Mo. banc 1987). *Batson* protections would be rendered illusory if neutral explanations or explanations with a vague reference to a venireperson's demeanor routinely are deemed sufficient. *Edwards*, 116 S.W.3d at 550.

Further, in cases such as this, an improper strike infringes upon the right of the venireperson to perform his or her civic duty of sitting on a jury. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991); *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992); *State v. Davis*, 835 S.W.2d 525 (Mo.App. E.D. 1992); *State v. Camden*, 837 S.W.2d 33 (Mo.App. W.D.1992). The proper remedy is "to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would." *State v. Grim*, 854 S.W.2d 403, 416 (Mo. banc 1993). "This remedy vindicates the equal protection rights both of the accused and the stricken venireperson." *State v. Hampton*, 163 S.W.3d 903, 905 (Mo. banc 2005).

"In evaluating a *Batson* challenge, the trial court's 'chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case.'" *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006)(*quoting Parker*, 836 S.W.2d at 939). In light of the totality of the facts and circumstances in this case, I believe the State's peremptory challenge was in error. "The survival of [the peremptory strike] procedure in a constitutionally permissible manner need be neither offensive nor unduly burdensome to our courts and lawyers. Whatever complications that may result are a small price to make citizen participation in our judicial process free from the taint of racial, gender-based, religious, or ethnic discrimination." *Parker*, 836 S.W.2d at 942 (Price, J., concurring).

Accordingly, I would reverse and remand for a new trial.