STATE of Missouri, Respondent,

v.

Alan R. CLARK, Appellant.

No. WD 68543.

Missouri Court of Appeals,
Western District.

Dec. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied
May 5, 2009.

Kent Denzel, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Daniel N. McPherson, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD LOWENSTEIN and JAMES SMART, JJ.

JOSEPH P. DANDURAND, Judge.

Alan R. Clark appeals his convictions and sentences for murder in the first degree, unlawful use of a weapon, and two counts of armed criminal action. In his two points on appeal, Mr. Clark claims that: (1) the trial court erred in overruling his *Batson* objection to the State's peremptory strike to remove a venireperson from the jury, asserting that the strike was racially discriminatory, and (2) the trial court abused its discretion in admitting a surveillance videotape, claiming that the video was not relevant evidence and served only to prejudicially inflame the jurors. The points are denied, and the judgments of conviction are affirmed.

## Facts

This court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, disregarding all contrary evidence and inferences. *See State v. Woodmansee,* 203 S.W.3d 287, 289 (Mo.App. S.D.2006). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Mr. Clark are summarized below.

On the evening of May 10, 2008, Alan R. Clark was part of a group of people driving to Argosy Casino, north of Kansas City, where there were plans to attend the marriage proposal of a friend. The group was travelling on Highway 9 in two separate three-car "convoys." The first convoy of cars exited Highway 9 and drove along Briarcliff Parkway to a T-intersection with Tullison Road, which is an outer road running alongside Highway 9. The cars turned right onto Tullison Road, heading in the direction of the Argosy Casino. Instead of proceeding to the casino, Mr. Clark and the two other cars made a U-turn and parked on the side of the road, facing back toward the intersection. Mr. Clark got out of his car and raised the hood. Then he walked to the back of the car where he pulled a gun from the trunk just as the second caravan of cars approached the intersection.

Michael Seay was driving the second car in the second "convoy" with his girlfriend riding in the passenger's seat. When they approached the intersection, the car they were following braked suddenly, and Mr. Seay was forced to stop. Mr. Clark began shooting toward the car occupied by Mr. Seay. Multiple shots were fired at Mr. Seay and his girlfriend.

Mr. Seay's girlfriend, Chalaun Hart, yelled at him to drive away, but he did not respond, so she climbed on top of him and put her foot over his to press the accelerator. In this manner, she was able to drive to the valet parking lot at the Argosy Casino. Upon arrival, she was observed screaming and asking for help.

Emergency medical technicians on duty at the casino removed Mr. Seay from the car and performed CPR, but he could not be revived. A subsequent autopsy revealed that Mr. Seay had died from a gunshot wound in the left side of the back.

Mr. Clark was charged by indictment in Clay County for murder in the first degree, section 565.020 [1]; unlawful use of a weapon, section 571.030; and two counts of armed criminal action, section 571.015. A substitute indictment charged Mr. Clark with the same offenses as a prior felony offender, pursuant to section 558.016. A jury trial was held in April, 2007.

The jury found Mr. Clark guilty of all of the charged offenses. The trial court sentenced him to life imprisonment without parole for the first degree murder conviction, a consecutive term of thirty years imprisonment for the associated count of armed criminal action, a consecutive term of thirty years for the unlawful use of a weapon conviction, and a concurrent term of thirty years for the second count of armed criminal action. This appeal followed. Further facts are set forth below as necessary.

### Standard of Review

Ordinarily, the trial court's ruling on a *Batson* challenge is reviewed for clear error, meaning the trial court's findings will be set aside only if we are left with the definite and firm conviction that a mistake has been made. *State v. McFadden*, 216 S.W.3d 673, 675 (Mo. banc 2007).

In determining the applicable standard of review in this case, it should be noted that Mr. Clark acknowledges that some of his arguments on appeal were not presented to the trial court. In general, "[a] litigant is not permitted to broaden the objection he presented to the trial court; he cannot rely on a theory different from the one offered at trial." *State v. Phillips*, 939 S.W.2d 502, 505 (Mo.App. W.D.1997). Because Mr. Clark failed to raise at trial some of the arguments presented on appeal, Mr. Clark asks this court to review them for plain error under Rule 30.20.

Plain error review involves a two-step process. *State v. White*, 92 S.W.3d 183, 189 (Mo.App. W.D.2002). First, the reviewing court must determine whether the claim of plain error, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. *State v. DeWeese*, 79 S.W.3d 456, 457 (Mo.App. W.D.2002). An error is plain if it is evident, obvious, and clear. *Id.* If evident, obvious, and clear error is found on the face of the claim, the appellate court has discretion to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Id.* In the present case, the trial court's rulings constitute neither clear error nor plain error.

The trial court's ruling on admission of the videotape at trial is reviewed for abuse of discretion. *State v. Minner*, 256 S.W.3d 92, 97 (Mo. banc 2008). Abuse of discretion is found only if the trial court's ruling was clearly against the logic of the circumstances and so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *See State v. Turner*, 242 S.W.3d 770, 777 (Mo. App. S.D.2008).

---

**1.** All statutory references are to RSMo 2000, unless otherwise noted.

## Point I: Denial of *Batson* Challenge

█ Mr. Clark claims that the trial court plainly erred in overruling his *Batson* objection to the State's peremptory strike of venireperson no. 30 because he contends that the strike was impermissible race discrimination. Specifically, he claims that the State's reasons for the strike were a mere pretext for discrimination, asserting that similarly-situated white venirepersons were not struck and the totality of the circumstances shows that one of the State's reasons was not a "sincere" reason.

At trial, during the jury selection process, counsel for Mr. Clark objected to the State's strike of venireperson no. 30, claiming that she was struck because she was African–American. In other words, defense counsel raised a *Batson* challenge.[2]

The State offered three reasons to justify using a peremptory strike for venireperson no. 30. The prosecutor stated:

First, she indicated that she was morally opposed to gambling. The State feels that may impact her decision in this case with regard to the fact that virtually everybody was in [sic] route to the Argosy Casino.

Secondly, she had mentioned that her brother was charged in [a nearby county] with some type of criminal offense, which we think may bias her towards the defense and against the State.

Thirdly, she talked about having experience with the law, or I believe, law classes. She's indicated that knowledge was fairly extensively [sic] although she didn't have a law degree.... We would rather not have anybody with outside legal knowledge in the case. It's my experience that can be detrimental to the State....

In response, defense counsel stated the following regarding the State's first reason:

I believe that [venireperson no. 30] said that even though she was morally opposed to gambling, that she would be able to set that aside and serve as a fair and impartial juror in this matter.

Defense counsel identified two other venirepersons who had also stated they were morally opposed to gambling, but who were too far down the list to make it into the jury pool. Regarding the State's second reason:

[DEFENSE COUNSEL]: [E]ven though she did respond that her brother had been prosecuted for something ... she wasn't sure what it was—

THE COURT: She said he took the fall for his girlfriend. She never understood just what it was.

[DEFENSE COUNSEL]: ... I would also say that certainly would not necessarily preclude her from being fair and impartial.

So my argument in response to the government's argument would be that their race-neutral reasons have fallen short of meeting the *Batson* challenge.

Counsel for Mr. Clark did not provide any further support for the accusation of purposeful discrimination regarding the State's concern about venireperson no. 30's legal background nor did he contradict any of the State's reasons for the strike. To the contrary, defense counsel agreed with the trial court's characterization when the court stated:

[Venireperson no. 30] offered that she had learned quite a bit about the law, and emphasized that criminal law was an area where she had gained knowledge.

**2.** In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the use of peremptory strikes to remove potential jurors based on race violated the Equal Protection Clause of the United States Constitution.

The trial court overruled the objection. On appeal, Mr. Clark claims this was error.

■■■ The Equal Protection Clause of the United States Constitution prohibits the use of a peremptory strike to remove a potential juror in a manner discriminating on the basis of race or gender. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). In Missouri, the trial court follows a three-step procedure when a defendant challenges the State's peremptory strikes based on equal protection grounds. *State v. Parker*, 836 S.W.2d 930, 933 (Mo. banc 1992). First, the defendant must raise a *Batson* challenge. Second, the State must put forth a reasonably specific and clear race- or gender-neutral explanation for the strike. Third, assuming the State's explanation is acceptable, the defendant has the burden to show such explanation was merely pretextual and, in fact, the strike was motivated by purposeful discrimination. *State v. Jackson*, 925 S.W.2d 856, 863–64 (Mo.App. W.D.1996).

In this case, there is no dispute that defense counsel raised a timely *Batson* challenge, identifying venireperson no. 30 as an African–American female. Neither is it disputed that the State's three proffered reasons for the strike were race-neutral. Therefore, the issue is whether Mr. Clark met his burden regarding the third step.

■■ The third step involves the trial court's examination of the "plausibility of the explanation for striking the venireperson," by considering the totality of the facts and circumstances surrounding the case. *State v. Marlowe*, 89 S.W.3d 464, 469–70 (Mo. banc 2002). In determining whether the defendant has carried the burden of proof and established the existence of purposeful discrimination, the trial court should take into account a variety of factors. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). Those factors include: (1) the existence of similarly situated white jurors who were not struck; (2) the degree of logical relevance between the proffered explanation and the case to be tried; (3) the prosecutor's credibility, based on his or her demeanor or statements during voir dire and the court's past experiences with that prosecutor; and (4) the demeanor of the excluded venireperson. *Id.* at 940 (quote marks and citations omitted).

The defendant has the burden to show that the reasons proffered by the State were merely pretextual. *State v. Johnson*, 220 S.W.3d 377, 383 (Mo.App. E.D.2007). Mr. Clark had the burden to establish as pretextual the State's three reasons for its strike of venireperson no. 30. The State asserted that she was stricken because: (1) she was morally opposed to gambling, (2) her brother was charged with a criminal offense, and (3) she had experience with the law. At trial, Mr. Clark failed to establish a single *Parker* factor, and he failed to meet his burden to establish that the race-neutral reasons were merely pretextual. Instead, he merely reiterated his belief that the venireperson was not precluded from being fair and impartial. In *Johnson*, the court of appeals concluded that the trial court did not clearly err in denying the defendant's *Batson* challenge where the State provided a race-neutral reason for the strike, and the defendant made no attempt to show that either of the State's race-neutral reasons were mere pretext. 220 S.W.3d at 383. Similarly, Mr. Clark did not contradict the prosecutor's statements or offer any justification to illustrate his claim of pretext. Therefore, because the State provided a race-neutral reason for striking venireperson no. 30, the trial court did not clearly err in overruling Mr. Clark's *Batson* challenge. *Id.*

On appeal, Mr. Clark presents for the first time additional arguments to support his claim that the State reasons were merely pretextual, asserting the existence of similarly situated white jurors who were not struck. *See Parker,* 836 S.W.2d at 930. Specifically, Mr. Clark identifies venireperson no. 1, a white venireperson who also had a relative charged with an offense, and venireperson no. 4, a white venireperson who had a criminal justice degree. Mr. Clark acknowledges that defense counsel did not raise the issue of these two similarly-situated panelists until this appeal. Nonetheless, he requests that we review his claims presented for the first time on appeal, under plain error review, *see supra.*

We elect to follow the reasoning of the Eastern District of this court in *Johnson,* refusing to consider arguments about pretextual strikes which are raised for the first time on appeal. 220 S.W.3d at 383 (declining to consider argument that there were similarly situated white venirepersons who were not struck by the State, where appellant did not raise that argument in order to show pretext in either the *Batson* hearing or his motion for a new trial, but raised it for the first time on appeal).

Mr. Clark further claims that the State's reasons were not shown by the totality of the circumstances to be "sincere" reasons. However, the totality of the facts and circumstances in this case demonstrate that the trial court believed the prosecutor to be credible. Regarding the "sincerity" of the State's reasons for its strike of venireperson no. 30, the trial court is in the unique position to assess the credibility (i.e. "sincerity") of the prosecutor. *See State v. Pointer,* 215 S.W.3d 303, 307 (Mo. App. W.D.2007) ("Because the trial court has the opportunity to observe the State during voir dire we afford her 'great deference to such a finding since the finding

turns largely on an evaluation of credibility ...'" (quoting *State v. Maynard,* 954 S.W.2d 624, 635 (Mo.App. W.D.1997))). "'The trial court had the opportunity to observe the prosecutor's demeanor and to assess his credibility.'" *Id.* (citation omitted).

In the case *sub judice,* the trial court explicitly found the prosecutor's articulated reasons to be legitimate and not racially motivated. *Id.* In permitting the State's strike, the trial court concluded, "Bottom line, I don't think the reasons stated by the State are pretextual. *I think they would be taking this person off regardless of her race.*" (Emphasis added.)

■■ At trial, Mr. Clark argued that despite the State's reasoning, venireperson no. 30 would still be able to serve as a fair and impartial juror. However, this mischaracterizes the *Batson* standard. A *challenge for cause* is used to strike a venireperson where it is indicated that the venireperson is prejudiced, cannot be fair and impartial, and, thus, is not qualified to serve on the jury. *State v. Wilson,* 998 S.W.2d 202, 205 (Mo.App. W.D.1999); *see also State v. Walton,* 796 S.W.2d 374, 377 (Mo. banc 1990). In contrast, "'the justification for a *peremptory strike* need not rise to the level of justification for a challenge for cause.'" *Pointer,* 215 S.W.3d at 307 (citation omitted, emphasis added). Instead, so long as it is facially valid, the State's explanation will be deemed race-neutral, *see id.* at 306 (quoting *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)), and *the defendant has the burden to show that the State's proffered reasons were a mere pretext for purposeful discrimination. Id.*

Moreover, this court recently rejected an argument identical to Mr. Clarks in *State v. Pointer. Id.* In *Pointer,* after finding that the denial of the *Batson* challenge was supported by the record, this

court addressed appellant's argument that "[the venireperson] did not give any indication that she could not be fair and impartial." *Id.* at 307. The court noted that "this observation is of little value" because "[a]t that stage of voir dire, the entire panel had survived challenges for cause and demonstrated they could be fair and impartial." *Id.* at 307–08. Venireperson no. 30 was not challenged "for cause."

Finally, we note that Mr. Clark attempts to convince this court to adopt an approach followed by the state of Indiana, wherein a valid reason for the strike will be "tainted" if any invalid reasons exist, rendering the strike invalid entirely. We reject Mr. Clark's argument and rely on the firmly-established Missouri case law set forth, *supra.*

The trial court did not err in overruling Mr. Clark's *Batson* objection because the State gave three race-neutral reasons for the strike and, as the opponent of the strike, Mr. Clark did not meet his burden of proving purposeful discrimination.

The point is denied.

### Point II: Admission of Video Evidence

█ Mr. Clark claims the trial court erred in admitting over his objection a casino surveillance videotape. He claims the video was legally irrelevant because its prejudicial effect outweighed its probative value and it was calculated to inflame the emotions of the jury. He asserts that permitting the State to show the jury the video, which was taken outside the casino and shows paramedics removing Mr. Seay from his car and performing CPR, was highly prejudicial. He further claims that the video was duplicative of still photographs of the scene.

At trial, the State presented evidence relating to the arrival of Mr. Seay's car at the Argosy Casino parking lot. The evidence included a videotape of the casino valet parking lot recorded by surveillance cameras. A surveillance officer at the Argosy Casino testified that, at the request of the Kansas City Police Department, she had compiled the video from several surveillance tapes showing video related to the crimes charged. Mr. Clark objected, claiming the video was duplicative evidence and was offered solely to inflame the emotions of the jurors. However, Mr. Clark acknowledged that a portion of the video would be admissible "to show the timestamp of the time that the car arrived in the valet circle driveway" of the casino. The trial court overruled the objection, and the jury was shown part of the video. From the record before this court, it is unclear how many minutes of the tape were played to the jury.

█ The general rule for admissibility of evidence is that the evidence must be (1) logically relevant and (2) legally relevant. *Murrell v. State*, 215 S.W.3d 96, 116 (Mo. banc 2007). "Evidence is 'logically relevant' if such evidence tends to make the existence of any material fact more or less probable than it would be without the evidence." *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992). Photographs [3] are logically relevant if they show, for example, the crime scene, the victim's identity, the condition and location of the body, or assist the jury in understanding the testimony. *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). Moreover, "[a] photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph." *Id.* Evidence is legally relevant if the usefulness of the evidence, i.e. its probative value, outweighs its costs, i.e. the danger of unfair prejudice, confusion of the issues,

---

**3.** The Missouri Supreme Court has determined that the same considerations pertain to video evidence. *See, e.g. State v. Middleton, 995 S.W.2d 443, 462 (Mo. banc 1999).*

misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *Sladek*, 835 S.W.2d at 314.

In this case, the trial court did not abuse its discretion in admitting the video. The video was logically relevant for the purpose of showing the condition and location of Mr. Seay's body at the time of arrival at the casino. On appeal, Mr. Clark argues that there was no probative value in showing any portion of the video *after* the time of arrival. In response, the State correctly asserts that the video "accurately depicted a portion of the crime scene." *See Rousan*, 961 S.W.2d at 844.

The video was legally relevant because its probative value was not outweighed by its prejudicial effect on the jury. *See Murrell*, 215 S.W.3d at 116. Although from the record before this court, it is unclear exactly how much of the video was shown to the jury,[4] regardless, there was nothing inflammatory in the videotape. Mr. Clark relies upon several cases for the proposition that photographs depicting a victim's body "should not be admitted where their sole purpose is to arouse the emotions of the jury and to prejudice the defendant." *See, e.g., State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc 1980)(citing *State v. Floyd*, 360 S.W.2d 630 (Mo.1962)). The video at issue is from a surveillance camera monitoring the area outside the casino. A review of the video clearly reveals that it is not graphic, gruesome, or otherwise offensive.

The trial court did not abuse its discretion in allowing the surveillance videotape to be admitted as evidence.

The point is denied.

**Conclusion**

The trial court did not err in overruling Mr. Clark's *Batson* objection to the State's peremptory strike of venireperson no. 30 because Mr. Clark did not meet his burden to establish as pretextual the State's proffered reason for the strike. The trial court did not abuse its discretion in admitting the surveillance videotape taken of the exterior of the casino. The judgments of conviction are affirmed.

All concur.

---

4. The transcript indicates that only a portion of the videotape was shown to the jury, but it does not specify how many minutes of the videotape played. Neither party has presented this court with an indication of how much of the tape was played.